ROBERT S. ARMSTRONG, by his Mother and Next Friend, Phyliss Armstrong, Plaintiff-Appellant and Cross-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee and Cross-Appellant.

Second District   No. 2—91—1007

Opinion filed June 5, 1992.

Markham M. Jeep, of Markham M. Jeep, P.C., of Waukegan, for appellant.

Glen E. Amundsen, Michael Resis, and Mary T. Nagel, all of Querrey & Harrow, Ltd., of Waukegan, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Robert S. Armstrong, by his mother and next friend, Phyliss Armstrong, brought an action for declaratory judgment against defendant, State Farm Mutual Automobile Insurance Company, seeking a determination of his rights to uninsured motorist coverage and

medical coverage under four policies. Two of the policies were issued to Robert; one was issued to Phyliss Armstrong, and the other was issued to Steven Armstrong.

On cross-motions for summary judgment, the trial court held that plaintiff was allowed excess uninsured motorist coverage only to the extent of the difference between his primary coverage and the coverage under Phyliss Armstrong's policy. The trial court thus declared plaintiff entitled to a total of $100,000 uninsured motorist coverage. The court then held that plaintiff was entitled to the full combined limits of the medical insurance under all four policies which totalled $76,000.

Plaintiff appeals from that part of the judgment which prevented him from "stacking" uninsured motorist coverage under all the policies. Defendant cross-appeals from that part of the judgment allowing plaintiff to "stack" the medical coverages under all the policies. We affirm the trial court on the uninsured motorist claim and reverse the trial court on the medical coverage claim.

The facts of this case are not in dispute. On June 12, 1987, plaintiff, while riding his 1987 Honda motorcycle, was struck and seriously injured by a car. The driver of the car had no automobile insurance. Plaintiff was hospitalized. He incurred and continues to incur substantial medical expenses.

At the time of the accident, plaintiff was residing with his mother, Phyliss Armstrong, and his brother, Steven Armstrong. All three family members had automobile insurance policies with defendant. All of the policies covered plaintiff, either as a named or unnamed insured. The policies provided coverage as follows:

| Named Insured | Vehicle Insured | Uninsured Motorist Limits | Medical Limits |
|---|---|---|---|
| Robert | 1987 Honda motorcycle | $25,000 | $1,000 |
| Robert | 1979 Chevrolet Malibu | 25,000 | 25,000 |
| Phyliss | 1987 Plymouth Colt | 100,000 | 25,000 |
| Steven | 1986 Mazda | 50,000 | 25,000 |

Each policy was written on "State Farm Policy Form 9813.6" (Form 9813.6). Each policy includes "Amendatory Endorsement 6989G" relating to uninsured motorist coverage and "Amendatory Endorsement 6989PP.1" for changes in medical coverage.

Form 9813.6 defines "car" as "a land motor vehicle with four or more wheels." The policy issued on plaintiff's 1987 Honda contains a

further amendment stating that the definition of "car" would be changed to include a "2-wheel land vehicle with wheels in tandem."

Under each policy, uninsured motorist coverage is provided by "Coverage U." Prior to the issuance of Amendatory Endorsement 6989G, this section read:

"If There Is Other Uninsured Motor Vehicle Coverage

1. Policies Issued By Us to You

If other uninsured motor vehicle coverage issued by us to you also applies to the insured's bodily injury, the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability.

2. Other Uninsured Motor Vehicle Coverage Available From Other Sources

Subject to 1. above:

(a) If the **insured** sustains **bodily injury**:

(1) as a pedestrian and uninsured motor vehicle coverage from a policy not issued by us also applies; or

(2) while **occupying your car,** and **your car** is described in the declarations page of another policy not issued by us providing uninsured motor vehicle coverage,

we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all such uninsured motor vehicle coverage applicable to the accident.

(b) If the **insured** sustains **bodily injury** while **occupying** a vehicle not owned by **you, your spouse** or **any relative** and uninsured motor vehicle coverage also applies from a policy not issued by us, coverage under this policy applies:

(1) as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

(2) only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

a. the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident.

3. THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER UNINSURED MOTOR VEHICLE COVERAGE ON A NEWLY ACQUIRED CAR."

Amendatory Endorsement 6989G reads in relevant part:

"d. **If There Is Other Uninsured Motor Vehicle Coverage**

(1) Item 2(b) is changed to read:

b. If the **insured** sustains **bodily injury** while **occupying** a vehicle which is not **your car**, coverage under this policy applies:

(1) as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

(2) only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

a. the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident.

(2) Item 3 is deleted."

In arguing the motions for summary judgment, defendant conceded that paragraph 1 of Form 9813.6 was irrelevant to whether plaintiff could "stack" uninsured motorist coverage under the policies issued to Phyliss and Steven Armstrong, as Phyliss and Steven each received only one policy from defendant.

Defendant argued, however, that as a result of paragraph 2b of Amendatory Endorsement 6989G, plaintiff was limited to collecting $100,000 uninsured motorist coverage. Defendant argued that under the endorsement the policies of Phyliss and Steven were excess coverage and that defendant was entitled only to excess coverage in the amount by which the highest limit of either policy exceeded plaintiff's primary coverage, *i.e.*, the $75,000 difference between plaintiff's coverage limit and Phyliss' coverage limit. Plaintiff maintained that because the endorsement was ambiguous, it was not an effective "antistacking" provision. Plaintiff therefore claimed entitlement to the full uninsured motorist coverage limits of all the policies combined.

The trial court agreed with defendant that the policy as amended limited plaintiff's uninsured motorist coverage to $100,000. The trial court also held that plaintiff was entitled to "stack" the medical cover-

ages under all four policies for a total limit of $76,000. Both sides appealed.

The following general principles are applicable to both issues. The construction of an insurance policy is a matter of law for the court to determine. (*Nationwide Mutual Insurance Co. v. Hecker* (1989), 183 Ill. App. 3d 13, 15.) The rules of contract construction apply to the interpretation of insurance policies; therefore, courts should try to determine and apply the intent of the parties. *Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 106.

■ Policy provisions against the "stacking" of coverage are not necessarily violative of public policy. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420; *Georgantas v. Country Mutual Insurance Co.* (1991), 212 Ill. App. 3d 1, 4.) However, to prevent "stacking," the provision upon which the insurer relies must clearly and unambiguously do so. (*Goss v. State Farm Mutual Automobile Insurance Co.* (1986), 147 Ill. App. 3d 866, 870.) Whether a provision in an insurance policy is ambiguous—that is, fairly susceptible of more than one interpretation—depends on a reading of the provision in its entire factual context and not in isolation. *Putzbach v. Allstate Insurance Co.* (1986), 143 Ill. App. 3d 1077, 1081.

■ We hold first that the trial court correctly ruled that plaintiff's uninsured motorist coverage is limited to $100,000. We agree with defendant and the trial court that the amendatory endorsement unambiguously prevented "stacking" and limited plaintiff to the excess coverage conceded by defendant. For clarity, we set out the relevant provisions as amended:

> "*If There Is Other Uninsured Motor Vehicle Coverage*
> 1. Policies Issued By Us To You
> If other uninsured motor vehicle coverage issued by us to **you** also applies to the **insured's bodily injury,** the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability.
> 2. Other Uninsured Motor Vehicle Coverage Available From Other Sources
> Subject to 1. above:
> ***
> (b) If the **insured** sustains **bodily injury** while **occupying** a vehicle which is not **your car,** coverage under this policy applies
> (1) as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but
> (2) only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

a. the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident."

We hold that part 1 of the amendatory endorsement, covering policies issued by defendant to the named insured, plainly prevented plaintiff from "stacking" his two policies. We further conclude that section 2(b) as amended plainly forbids "stacking" of excess insurance. Plaintiff argues that the inclusion of the term "From Other Sources" and the failure to specify that the provision applies to "stacking" of policies issued by defendant renders the provision ambiguous. We cannot agree. The provision is comprehensive in its restrictions. Part 1 refers to policies issued by defendant to a particular named insured. Part 2 simply refers to *any* other source of uninsured motor vehicle coverage. Read naturally, this would include sources such as policies where the plaintiff is not the named insured. Section 2(b) similarly states, in unambiguous language, that defendant's liability is limited to the highest limit of liability of *any* of the coverages that apply as excess. This limits plaintiff's total recovery of uninsured motorist coverage from defendant to $100,000.

The presence of a "proration clause" at the end of the provision does not introduce ambiguity into the clear language of the "antistacking" provision. The proration clause is set off from the "antistacking" language. The proration clause is designed to prevent other insurers, if any, from paying less than their fair share of a jointly covered loss. (*Putzbach*, 143 Ill. App. 3d at 1081.) The "antistacking" provision and the proration clause serve separate and important functions. Although the questioned language is somewhat technical in nature, we conclude that the amendatory endorsement accomplished its intended purpose and limited plaintiff's recovery of uninsured motorist coverage to $100,000. It is noted that the supreme court of Ohio has reached the same result in construing substantially similar policy language as being sufficiently unambiguous to be enforceable as a valid "antistacking" provision. *Saccucci v. State Farm Mutual Automobile Insurance Co.* (1987), 32 Ohio St. 3d 273, 512 N.E.2d 1160.

We next hold that the trial court erred in concluding that plaintiff could "stack" medical coverages under all four policies. It is unnec-

essary to set out the medical coverage provisions in depth because we agree with defendants that under all of the policies, save the one covering plaintiff's motorcycle, plaintiff is not entitled to medical benefits because his motorcycle is not a "car" within the meaning of the other three policies.

Section II of Form 9813.6 requires that to recover medical benefits an insured must have suffered the injury while being struck as a pedestrian (which the parties agree was not the case here) or while operating or occupying a vehicle covered under the liability section of the policy. Form 9813.6 limits coverage to the use by an insured of the named vehicle ("your *car*," "a newly acquired *car*," "a temporary substitute *car*," or "a non-owned *car*"). (Emphasis added.) Form 9813.6 defines "car" as "a land motor vehicle with four or more wheels." This definition clearly excludes a motorcycle and explains why the policy covering plaintiff's motorcycle specifically includes a separate and unique amendment changing the definition of "car" to include a motorcycle under that policy.

The conclusion that plaintiff's motorcycle is not a "car" covered by the other three policies is necessitated by the plain language of the policies. It is also supported by precedent in this State. (*State Farm Mutual Automobile Insurance Co. v. Childers* (1977), 50 Ill. App. 3d 453 (injuries from motorcycle not covered under insurance policy for automobile as "automobile" and "motorcycle" have different meanings); see also *State Farm Mutual Automobile Insurance Co. v. Salerno* (1984), 121 Ill. App. 3d 384 (six-wheeled truck was not "four wheel land motor vehicle" covered by policy).) Medical coverage for plaintiff's injuries was thus available only under the policy insuring his 1987 Honda motorcycle. The parties agree that this coverage amounts to $1,000.

We therefore hold, as a matter of law, that plaintiff is entitled to a maximum of $100,000 uninsured motorist coverage and $1,000 medical coverage under the policies at issue. Pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we modify the declaratory judgment to that effect.

The judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

McLAREN and UNVERZAGT, JJ., concur.