FIRST DIVISION

JUNE 23, 1997 

Nos. 1-94-2957 and 1-94-3229 (Consolidated)

DONNA P. JONES, Guardian of the Estate ) APPEAL FROM THE

of JESSICA JONES, a minor, ) CIRCUIT COURT

Plaintiff-Appellant, ) OF COOK COUNTY.

v. )

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a )

corporation, PATRICIA C. JUNIOUS, and HARB BOURY, )

Defendants-Appellees. )

---------------------------------------------------- )

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and )

STATE FARM FIRE AND CASUALTY COMPANY, )

Counterplaintiffs-Appellants, )

v. )

NABIL BOURY; MAYSOON BOURY; MAYSOON BOURY, Special )

Adminis­tra­tor of the ESTATE OF REENA BOURY, Deceased; )

RANNIE AL-AMIRI; PAUL LEDER, Special Administrator of )

the ESTATE OF SUZANNE LEDER, De­ceased; and DONNA JONES,)

Guardian of the ESTATE OF JESSICA JONES, a minor, )

Counterdefendants-Appellees. )

-------------------------------------------------------)

HARB BOURY, Individually and as Independent )

Administrator of the ESTATE OF REENA BOURY, Deceased; )

NABIL BOURY; MAYSOON BOURY; PAUL LEDER, Individual­ly )

and as Independent Administrator of the ESTATE OF )

SUZANNE LEDER, Deceased, JANE LEDER; HASSOON AL-AMIRI; )

RONDA AL-AMIRI; and RANNIE AL-AMIRI, )

Counterplaintiffs/Cross-Appellants, ) 

v. )

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE )

FARM FIRE AND CASUALTY COMPANY; and DONNA P. JONES, ) 

HONORABLE

Guardian of the ESTATE OF JESSICA JONES, a minor, ) AARON JAFFE,

Counterdefendants/Cross-Appellees. ) JUDGE PRESID­ING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of an action brought by the plain­tiff, Donna P. Jones, guardian of the Estate of Jessica Jones, a minor, seeking a declaratory judgment that certain automobile liability insurance policies issued by defen­dants, State Farm Mutual Automobile Insurance Company (State Farm Mutual) and State Farm Fire and Casualty Company (State Farm Fire) (collectively, the Insurance Companies), provided underinsured motorist coverage to plaintiff for an accident occurring on June 23, 1992.  The In­surance Companies filed a counterclaim against plaintiff and counterdefendants Nabil Boury; Maysoon Boury; Maysoon Boury, Special Administrator of the Estate of Reena Boury, deceased; Rannie Al-Amiri; and Paul Leder, Special Administrator of the Estate of Suzanne Leder, deceased, all of whom were occupants in the same car with plaintiff at the time of the accident, seeking a declaratory judgment that:  (1) certain automobile policies issued by them to all of the counterdefendants did not provide excess underinsured motorist coverage to the counterdefen­dants; and (2) the umbrella policy issued by State Farm Fire provided a total of $1,000,000 of excess underinsured motorist coverage to all of the counter­defendants.

Plaintiff filed a motion for judgment on the pleadings and all of the other parties filed cross motions for summary judg­ment.  In two orders entered on August 9, 1994, and August 22, 1994, the trial court granted summary judg­ment in favor of plaintiff and counterdefendants and against State Farm Mutual that certain automobile policies provided excess underinsured motorist cover­age to the parties who were insured under said policies.  The trial court granted summary judgment in favor of State Farm Fire on the umbrella policy, ruling that it provided a total of $1,000,000 of excess underinsured motorist coverage for all of the counterdefendants.  The trial court also ruled that the "each accident" limit, rather than the "each person" limit, applied to the wrongful death claims of Reena Boury and Suzanne Leder, and that the loss of consortium claims of Ronda and Hassoon Al-Amiri were covered for excess underinsured motorist coverage under certain automobile policies issued by State Farm Mutual.   On appeal, the Insurance Companies contend that the trial court erred in granting summary judgment in favor of plaintiffs-counterdefendants as follows:  (1) determining that certain Il­linois policies of automobile liability insurance provide excess underinsured motorist coverage for the accident of June 23, 1992; (2) determining that the "each accident" limit, rather than the "each person" limit, applied to the wrongful death claims of Reena Boury and Suzanne Leder; (3) determining that the Ohio policies provide more than $100,000 of excess underinsured motorist coverage for the claim of Rannie Al-Amiri; (4) determin­ing that Ronda and Hassoon Al-Amiri have claims for loss of consortium for the in­juries to their son, Rannie Al-Amiri; and (5) determining that the Ohio policies provide underinsured motorist coverage for the loss of consortium claims of Ronda and Hassoon Al-Amiri.

Plaintiff and counterdefendants filed cross-appeals, con­tending that the trial court erred in determining that the $1,000,000 limit of personal liability umbrella insurance on the policy issued to Harb Boury provides underinsured motorist coverage with a total limit of $1,000,000 for the claims of all of the occupants of the Ford Explorer at the time of the acci­dent, rather than on a per person basis.  For the following reasons, we affirm in part and reverse in part.

BACKGROUND

The record reveals the following relevant facts.  On June 23, 1992, Nabil Boury was driving a 1992 Ford Explorer on the Eisenhower Expressway near Damen Avenue, Chicago, Illinois, when he was involved in an accident with a vehicle driven by Patricia Junious.  Jessica Jones, Maysoon Boury, Reena Boury, Rannie Al-Amiri and Suzanne Leder were passengers in Nabil's Ford Explorer.  Jessica Jones was seriously injured in the collision, sustaining brain damage; Reena Boury and Suzanne Leder died as a result of the accident; Rannie Al-Amiri suffered debilitating brain damage and blindness in one eye; and Nabil Boury and Maysoon Boury both sustained significant injuries.

The vehicle driven by Junious was insured by State Farm Mutual with bodily injury liability limits of $20,000 per person, $40,000 per accident.  The parties reached a settlement based on the Junious policy and it is not the subject of this appeal.

The Ford Explorer occupied by counterdefendants was covered by an insur­ance policy issued by State Farm Mutual which provided primary under­insured motorist coverage with limits of $100,000 per person, $300,000 per accident.  The parties do not dispute that this policy provides $260,000 of underinsured motorist coverage for all six occupants in the Ford Explorer with the maximum amount collectible by any one occupant being the sum of $100,000, minus the amount paid to that person by the tort-feasor's liability insurer.  This policy and the trial court's order relating thereto are therefore not involved in this appeal.

In addition to the policy on the Ford Explorer, State Farm Mutual issued the following policies to the following counter­defendants:

A. Four separate policies to Harb Boury for four other cars: a 1990 Mercedes; a 1979 Cadil­lac; a 1988 Honda; and a 1992 Jaguar, all with $100,000/$300,000 underinsured motorist limits;   

B. Two separate policies to Paul and Jane Leder for a 1991 Chevrolet and a 1987 Chevrolet, both with $100,000/$300,000 underin­sured motorist limits;

C. One automobile policy to Winslow and Donna Jones for a 1989 Jeep, with underinsured motorist limits of $250,000/$500,000;

D. Five separate automobile policies to Ronda and Hassoon Al-Amiri for:  a 1989 Toyota; a 1987 Acura; a 1988 Toyota; a 1981 Buick; and a 1982 Toyota, all with underinsured motorist limits of $100,000/$300,000.

State Farm Fire issued one automobile policy to Winslow and 

Donna Jones on a 1982 Isuzu with $100,000/$300,000 underinsured motorist limits. The five policies issued to the Al-Amiri family members were issued in Ohio to Ohio residents on vehicles registered in Ohio.  All other policies were issued in Illinois to Illinois residents on vehicles registered in Illinois.

In addition to the above described automobile policies, State Farm Fire issued a personal liability umbrella policy to Harb Boury which provided a total of $1,000,000 of underinsured motorist coverage applicable to all of the occupants of the Ford Explorer.

On August 9, 1994, the trial court entered an order granting in part and denying in part both counterdefendants' motion for summary judgment and the Insurance Companies' motion for summary judgment as follows:

"3. The automobile liability policy on the Ford Explorer [citations omitted] provides primary underin­sured motor vehicle coverage to the occupants of said Ford Explorer at the time of the accident with total applicable coverage of $260,000 with the maximum amount that any one person can collect being the sum of $100,000 less the amount said person is paid by the tortfeasor's liability insurance.

4. The Court finds that the policy lan­guage relied upon by State Farm (i.e. the policy language on page 14 of each State Farm policy) to deny stacking of underinsured motor vehicle coverages is, as a mater of law, am­biguous.  Accordingly, the counterdefendants may stack their respective underinsured motor vehicle cover­ages.

5. The automobile liability policies issued to counter­defendant HARB BOURY, other than the policy on the Ford Explorer [citations omitted] provide excess underinsured motor vehicle coverage with a limit of $100,000 for the claim of NABIL BOURY and a limit of $100,000 for the claim of MAYSOON BOURY under each policy.

6. The automobile liability poli­cies issued to RONDA or HASSOON AL-AMIRI [citations omitted] each provide excess under­insured motor vehicle coverage with a limit of $100,000 for the claim of RANNIE AL-AMIRI.

7. The automobile liability policies issued to PAUL and JANE LEDER [citations omitted] each pro­vide excess underinsured motor vehicle coverage for the claim of PAUL LEDER, Special Administrator of the Estate of Suzanne Leder, Deceased.  The amount of the excess underinsured motor vehicle coverage under each of the Leder policies (i.e. whether $100,000.00, the per person limit, or $300,000, the per accident limit) is not deter­mined by this order.  

8. The automobile liability policies issued to counter­defendant, HARB BOURY, other than the policy on the Ford Explorer [citations omitted] each provide excess underinsured motor vehicle coverage for the claim of HARB BOURY, Special Administrator of the Estate of Reena Boury, Deceased.  The amount of the excess under­insured motor vehicle coverage under each of the Boury policies (i.e. whether $100,000.00 the per person limit, or $300,000.00, the per accident limit) is not deter­mined by this order.

9. The personal liability umbrella policy issued to counterdefendant, HARB BOURY, [citations omitted] provides under­insured motor vehicle coverage with a total limit of liability of $1,000,000.00 for the claims of all of the occupants of the Ford Explor­er at the time of the accident."

The trial court did not render its order final and appealable. 

On August 22, 1994, the trial court entered a second order, granting counter­defendants' motion for summary judgment and denying the summary judgment motion of the Insurance Companies, finding as follows:

"2. The court finds that the underinsured motor vehicle coverage wrongful death claims relating to the deaths of REENA BOURY and SUZANNE LEDER are subject to the $300,000.00 "each accident" limits of liability under each of the applicable automo­bile liability poli­cies.

3. The automobile liability policies issued to HARB BOURY, [citations omitted], each provide excess underinsured motor vehicle coverage with limits of $300,000.00 under each policy for the wrongful death claims relating to the death of REENA BOURY.

4. The automobile liability policies issued to PAUL and JANE LEDER [citations omitted], each provide excess underinsured motor vehicle coverage with limits of $300,000.00 under each policy for the wrongful death claims relating to the death of SUZANNE LEDER.

5. The Court finds that Ohio law governs the loss of consortium claims of RONDA and HASSOON AL-AMIRI, the parents of RANNIE AL-AMIRI.  Accordingly, the auto­mobile liability policies issued to the AL-AMIRIs [cita­tions omitted] each provide excess under­in­sured motor vehicle coverage for the loss of consor­tium claims of RONDA and HASSOON ALL-AMIRI [sic] with a limit of $100,000.00 for the claim of each under each of the policies.

The trial court concluded that both its orders of August 9, 1994, and August 22, 1994, were final and appealable, the court having decided all of the issues in the case. 

The Insurance Companies filed their timely notice of appeal of portions of the trial court's orders of August 9, 1994, and August 22, 1994, on August 26, 1994.  Plaintiff filed her notice of appeal of paragraph 9 of the trial court's order of August 9, 1994, on September 21, 1994.

OPINION

Initially, the Insurance Companies contend that the trial court erred in determining that:  (1) the applicable provision of the eight Illinois policies of automobile liability insurance is ambiguous and therefore permits stacking of underinsured motor vehicle coverages; and (2) the same provisions provide excess underinsured motorist coverage for the accident of June 23, 1992.

Section 143a-2(5) of the Illinois Insurance Code provides in pertinent part as follows:

"(5) Scope.  Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage avail­able under this Section under more than one policy or provis­ion coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the appli­cable limits of the respective coverage, and the limits of liability under this Section shall not be in­creased because of multiple motor vehicles covered under the same policy of insurance * * *."  215 ILCS 5/143a-2(5) (West 1994). 

Thus, the Insurance Code provides that if an insurance company intends to prohibit the stacking of underinsured motorist bene­fits, it must expressly so state.  

The function of the court in construing an insurance policy is to ascer­tain and enforce the intention of the parties as expressed in the agreement, and the construction given the policy should be a natural and reasonable one.  
de los Reyes v. Travel­ers Insurance Companies
, 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304 (1990).  If the language of an insurance policy is ambiguous, it must be construed against the insurance company and in favor of the in­sured.  
Allstate Insurance Co. v. Gonzalez-Loya
, 226 Ill. App. 3d 446 (1992).  However, if a policy of insurance is clear and unam­biguous, it must be enforced according to its terms. 
United States Fire Insurance Co. v. Schnack­enberg
, 88 Ill. 2d 1, 429 N.E.2d 1203 (1981).  An insurer is entitled to the enforcement of unambigu­ous antistacking provisions to the extent that such provisions represent terms to which the parties have agreed to be bound.  
Bruder v. Country Mutual Insur­ance Co
.
, 156 Ill. 2d 179, 188-89, 620 N.E.2d 355, 359 (1993).  This court cannot strain or torture the language of an insurance policy to create an ambiguity.  
Gonzalez-Loya
, 226 Ill. App. 3d at 449. 

Each of the Insurance Companies' policies in the present case contain the identical relevant provisions as follows:

"Section III - Uninsured Motor Vehicle - coverage U,

Uninsured Motor Vehicle - Coverage U, and 

Underinsured Motor Vehicle - Coverage W

* * * 

If There is Other Underinsured Motor Vehicle Coverage

 
* * * 

3. If the 
insured
 sustains 
bodily injury
 while occu­py­ing a vehicle which is not 
your car,
 cov­erage under this policy ap­plies;

a. as excess to any underinsured motor vehi­cle cover­age which applies to the vehicle as primary cover­age, but

b. only in the amount by which it exceeds the pri­mary coverage.

If coverage under more than one policy issued by us or any other insurer applies as excess:

a. the total limits of liability shall not ex­ceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as ex­cess; and

b. we are liable only for our share.  Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all under­insured motor vehi­cle coverage applicable as excess to the accident.

* * *

Your Car
 - Means the 
car
 or the vehicle described on the declara­tions page."

The Insurance Companies argue that the above provision clearly provides that there is no excess underinsured motorist coverage applicable whenever the limits of the excess underinsured motor­ist coverage are the same as or less than the limits of the primary underinsured motorist coverage.  The Insurance Companies argue that with the exception of one Jones policy, which provides excess coverage with limits of $250,000/$500,000, all of the other policies provide excess underinsured motorist coverage with the same limits as the primary coverage on the Ford Explorer, i.e., $100,000/$300,000. 

However, the trial court determined that the above policy language is ambiguous, and the Insurance Companies have failed to show otherwise.  

The cases relied upon by the Insurance Companies are all distinguish­able.  First, the Insurance Companies rely on 
Grzesz­czak v. Farmers Ins. Co
, 168 Ill. 2d 216, 659 N.E.2d 952 (1995).  There, the plaintiff Molly Grzesz­czak's dece­dent, Jeffrey, was killed while riding in an automobile owned and driven by his brother, Richard, and settled for the policy limits of Richard's insurance.  However, Jeffrey was also covered under two separate Farmers' insurance poli­cies, which insured two different automo­biles.  Both policies provided for underinsured-motorist coverage of $100,000 for each person and $300,000 for each occurrence.  The Grzeszczaks paid an identical premium of $23.30 for under­insured-motorist coverage under each policy.  
Grzeszczak
, 168 Ill. 2d at 219-20.

After settling with Richard's insurer for $100,000, Molly demanded payment from Farmers in the amount of $100,000, reason­ing that Jeffrey had a combined total of $200,000 underinsured-motorist coverage because they paid separate premiums for the two policies.  Farmers denied Molly's claim based on antistack­ing clauses con­tained in each policy.  The relevant policy provision stated as follows:

"With respect to any accident or occur­rence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applica­ble limit of liability under any one policy."  
Grzesz­czak
, 168 Ill. 2d at 220.

Molly theorized that the above anti-stacking provision was am­biguous because:  (1) the two policies named different insur­eds; (2) the two $23.30 premiums should have purchased two $100,000 coverage limits; and (3) Farmers never explained the limits of the coverage, and it was unfair to imply such knowl­edge to a layperson.  Molly further claimed that the $23.30 premium on the second vehicle was exorbitant.  
Grzeszczak
, 168 Ill. 2d at 221.

The trial court entered judgment on the pleadings in favor of Farmers, finding that the anti-stacking clause contained no am­biguity and therefore precluded Molly's recovery.  This court reversed, agreeing that the anti-stacking clauses in the two policies were clear and unambiguous, but conclud­ing that the $23.30 premium for the second car was exorbitant and in violation of public policy.  This court found that Molly had established "ove­rreaching" by an insurance company, an exception to the general rule that unambiguous antistack­ing clauses are to be enforced as written. 
 Overreaching is evidenced by exorbitant premiums, which justify a court in refusing to enforce anti-stacking clause con­tained in insurance contracts.  
Menke v. Country Mutual Insurance Co.
, 78 Ill. 2d 420, 
426, 401 N.E.2d 539 (1980).

On appeal, our supreme court reversed the judgment of the appellate court, finding that the language in Molly's policies clearly and unambiguously prohib­ited the stacking of underin­sured-motorist coverage, and that the antistacking clauses were not rendered ambiguous by any of the factors she asserted. See 
Grzeszczak
, 168 Ill. 2d at 225-233. 

Allstate v. Gonzalez-Loya
, 226 Ill. App. 3d 446 (1992), another case upon which the Insurance Companies rely, is similar­ly distinguishable.  There, the plaintiff attempted to stack underin­sured motorist coverage, arguing that the policy only prohibited stacking of uninsured motorist coverage.  This court determined that a plain reading of the policy disclosed:  (1) that "uninsured" always includes "underinsured"; and (2) that the antistacking provision clearly provided that $100,000 was the highest limit available to the Loyas for underin­sured motorist benefits, and clearly and unambiguously prohibited the stacking of underinsured motorist benefits.  

The construction of insurance policies is a question of law that this court determines de novo.  
Shefner v. Illinois Farmers Insurance Co.
, 243 Ill. App. 3d 683, 686 (1993).  "An insurance policy is not to be interpreted in a factual vacuum; it is issue under given factual circumstances.  What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued."  
Glidden v. Farmers Auto Insurance Association
, 57 Ill. 2d 330, 336 (1974); 
Kauffmann v. Economy Fire & Casualty Co.
, 76 Ill. 2d 11, 16 (1979).

Grzeszczak
 and 
Gonzalez-Loya
 are factually distinguishable from the present case and therefore inapposite to the disposition of this matter.  Unlike the plaintiffs in 
Grzeszczak
 and 
Gonza­lez-Loya
, the plaintiff and counterdefen­dants here are not asserting that certain factors render otherwise unambiguous anti-stacking policy language to be ambiguous.  The trial court correctly determined that the antistacking policy language here is in fact ambiguous, when applied to the facts and circumstances of the present case.

The Insurance Companies further rely on 
Armstrong v. State Farm Mutual Auto. Ins
., 229 Ill. App. 3d 971 (1992).  There, the  plaintiff, Robert Arm­strong, was riding a motorcycle when he was struck and seriously injured by a car.  The driver of the car had no automobile insurance.  At the time of the accident, plaintiff was residing with his mother, Phyliss and his brother Steven.  All three family members had automobile insurance policies with State Farm, and all of the policies covered plaintiff either as a named or unnamed insured.  Both a policy on a motorcycle and on a 1979 Chevrolet Malibu named Robert as an insured and had unin­sured motorist limits of $25,000; a policy on a 1987 Plymouth Colt named Phyliss and had uninsured motorist limits of $100,000; and a policy on a 1986 Mazda named Steven and had uninsured motorist limits of $50,000.  Each policy provided in pertinent part:

"If There Is Other Uninsured Motor Vehicle Coverage

1.  Policies Issued By Us to You

If other uninsured motor vehicle coverage issued by us to you also applies to the in­sured's bodily inju­ry, the total limits of liability under all such cover­ages shall not exceed that of the coverage with the highest limit of liability.

2. Other Uninsured Motor Vehicle Coverage Avail­able From Other Sources

Subject to 1. above:

(a)  If the 
insured
 sustains 
bodily in­jury
:

(1)  as a pedestrian and uninsured motor vehicle coverage from a policy not issued by us also applies; or

(2)  while 
occupying your car
, and 
your car
 is described in the declarations page of another policy not issued by us providing unin­sured motor vehicle coverage,  we are liable only for our share. Our share is that per cent of the damag­es that the limit of lia­bility of this cover­age bears to the total of all such unin­sured motor vehi­cle coverage applicable to the accident.

(b) If the 
insured
 sustains 
bodily injury
 while 
occupying
 a vehicle not owned by 
you, your spouse
 or 
any relative
 and un­insured motor ve­hicle coverage also ap­plies from a policy not issued by us, coverage under this policy ap­plies:

(1)  as excess to any uninsured motor vehi­cle coverage which applies to the vehicle as pri­mary coverage, but

(2)  only in the amount by which it ex­ceeds the pri­mary coverage.

If coverage under more than one policy ap­plies as excess:

(a) the total limits of liability shall not exceed the difference between the limit of lia­bility of the coverage that applies as pri­mary and the high­est limit of liability of any one of the coverages that apply as ex­cess; and

(b) we are liable only for our share.  Our share is that per cent of the damages that the highest limit of liability of any policy issued by use bears to the total of all unin­sured motor vehicle coverage applica­ble as ex­cess to the acci­dent."  
Armstrong
, 229 Ill. App. 3d at 972-73.

The policy also included "Amendatory Endorsement 6989G" relating to uninsured motorist coverage, which read:

"d. 
If There Is Other Uninsured Motor Vehicle Cov­er­age

(1)  Item 2(b) is changed to read:

b.  If the 
insured
 sustains 
bodily injury
 while 
occupying
 a vehicle which is not 
your car,
 cover­age under this policy applies:

(1)  as excess to any uninsured motor vehicle coverage which applied to the vehicle as primary cover­age, but

(2)  only in the amount by which it ex­ceeds the primary coverage. 

If coverage under more than one policy ap­plies as ex­cess:

a.  the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the high­est limit of liability of any one of the coverages that apply as excess; and

b.  we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applic­able as excess to the accident."

On cross-motions for summary judgment, State Farm argued that as a result of paragraph 2b of the Amendatory Endorsement 6989G, Robert was limited to collecting $100,000 uninsured motorist coverage.  State Farm argued that under the endorsement the policies of Phyliss and Steven were excess coverage and that defendant was entitled only to excess coverage in the amount by which the highest limit of either policy exceeded plaintiff's primary coverage, i.e., the $75,000 difference between plain­tiff's coverage limit and Phyliss' coverage limit.  Plain­tiff maintained that because the endorsement was ambiguous, it was not an effective "antistacking" provision.  
Armstrong
, 229 Ill. App. 3d at 974.

The trial court held that under the policy, as amended, plaintiff was allowed excess uninsured motorist coverage only to the extent of the differ­ence between his primary coverage on the motorcycle, $25,000, and the coverage under Phyliss' policy, $100,000, i.e., $75,000.  
Armstrong
, 229 Ill. App. 3d at 974.

On appeal, this court held that the trial court correctly ruled that the amendatory endorsement unambiguously prevented stacking and limited plaintiff to the excess coverage conceded by State Farm.  The court stated:

"Part 2 simply refers to any other source of uninsured motor vehicle coverage.  Read naturally, this would include sources such as policies where the plaintiff is not the named insured.  Section 2(b) similarly states, in unambiguous language, that defendant's liability is limited to the highest limit of liability of any of the coverages that apply as excess.  This limits plain­tiff's total recovery of uninsured motor­ist cover­age from defendant to $100,000."  
Armstrong
, 229 Ill. App. 3d at 976. (Emphasis in original).

The court further noted that the supreme court of Ohio reached the same result in construing substantially similar policy language as being sufficiently unambiguous to be enforceable as a valid antis­tacking provision in 
Sacucci v. State Farm Mutual Automobile Insurance Co.
, 32 Ohio St. 3d 273, 512 N.E.2d 1160 (1987).  There, the Ohio supreme court acknowledged "detailed and conflicting, arguments as to the degree of clarity, conspicuous­ness and am­biguity of the language at issue," and determined that "although the language at issue is somewhat technical, it does not seem that the provision is so unclear or ambiguous as to be deceptive or unreasonably difficult to understand."  
Sacucci
, 512 N.E.2d at 1163-64.  

However, three justices dissented from the 
Sacucci
 deci­sion, noting that:  "the antistacking provisions in State Farm's policies are not worded clearly enough to be understood by an ordinary person to preclude the stacking of policies."  
Sacucci
, 512 N.E.2d at 1164.

We find 
Armstrong
 distinguishable on its facts.  First, the 
Armstrong
 case dealt with uninsured motorist coverage, rather than underinsured motorist coverage, which is at issue here. In addi­tion, in 
Armstrong
, one insured claimant collected the full amount of $100,000, the highest limit of uninsured motorist coverage under any of the policies combined, $75,000 of which repre­sented the excess coverage.  By contrast, none of the counterdefendants in the present case will recover the entire Ford Explorer's policy limits of $300,000.  Finally, the 
Arm­strong
 plaintiff was a named insured on two policies and attempt­ed to aggregate coverage from those policies as well as those held by his mother and brother where he was an unnamed insured.  By contrast, plaintiff Jessica Jones was not a named insured on any of the policies at issue.

Although the antistacking policy language in 
Armstrong
 is comparable to the antistacking clause in the present case, this court is not obliged to interpret similar policy language in a similar fashion.  The antistacking language in the present case, on its face, is not reasonably read to have one specific meaning.  The portion of the antistacking provision here which reads:  "Our share is that percent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident," (emphasis added) creates an ambiguity as to the amount the insurer will pay out, in light of the policy provision that all applicable policies will be considered in the "equation."  We  therefore find that under the facts and circumstances of this case, the trial court properly determined that the policy lan­guage at issue here is ambiguous and that the policies may therefore be stacked to provide excess coverage. 

THE AL AMIRIS AND THE OHIO POLICIES

The Insurance Companies further contend that the trial court erred in determining that the Al-Amiris have valid claims for loss of consortium under Ohio law for the injuries incurred by Rannie Al-Amiri.  The Insurance Com­panies argue that this issue is con­trolled by Illinois law, which provides that the issue of whether the Al-Amiris have a cause of action for loss of consor­tium is a tort law issue and not a contract issue.

 Under Illinois choice of law principles, the "most signifi­cant contacts"  must be examined. 
Ingersoll v. Klein
, 46 Ill. 2d 42, 45 (1970).  When two or more jurisdictions have an interest in apply­ing their law to a matter in controversy, the following factors are relevant in choosing which rule of law to apply:

"(a) the needs of the interstate and in­terna­tional systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other inter­ested states and the relative inter­ests of those states in the determination of the par­ticular issue,

(d) the protection of justified expecta­tions,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and unifor­mity of re­sult, and

(g) ease in the determination and applica­tion of the law to be applied."  
Estate of Barnes
, 133 Ill. App. 3d 361, 366, 478 N.E.2d 1046 (1985)(citing Re­statement of the Law 2d, Conflict of Laws 2d, Sec. 6 (1971)).

Where a conflict arises in the area of tort law, the Re­state­ment requires that the law of the State that has "the most sig­nificant relationship to the occurrence and the parties under the principles stated in section 6" should be applied.  
Barnes
, 133 Ill. App. 3d at 366; Restatement of the Law 2d, Conflict of Laws 2d, Sec. 145 (1971).  Important contacts that the forum will consider in determining the State with the most significant rela­tion are:

"(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incor­poration and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered."  (Restatement of the Law 2d, Con­flict of Laws 2d, Sec. 145 (1971).)

However, conflicts analysis under the second Restatement requires more than a mere tallying of contacts in each respective State and a comparison to determine which State has the highest total.  Illinois courts have rejected this "contact counting" approach in favor of a more sophisticated "interest analysis" construction of the Restatement.  
Mitchell v. United Asbestos Corp.
, 100 Ill. App. 3d 485, 426 N.E.2d 350 (1981).  As the court noted in Mitchell:

"This approach [interest analysis] is based on the conclu­sion that '[c]ontacts obtain significance only to the extent that they re­late to the policies and purpos­es sought to be vindicated by the conflict­ing laws.'  (Miller v. Miller (1968), 22 N.Y.2d 12, 17, 290 N.Y.Supp.2d 734, 738, 237 N.E.2d 877, 880; In re Estate of Crichton (1967), 20 N.Y.2d 124, 134-35, 281 N.Y.Supp.2d 811, 820, 228 N.E.2d 799, 806.)  In­stead of a mere counting of con­tacts, what is there­fore required is a 'co­nsideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.'"  100 Ill. App. 3d 485, 493, 426 N.E.2d 350.

Accordingly, sections 6 and 145 of the Restatement are con­strued together as requiring (1) an examination of the rele­vant policies of the forum; and (2) the relevant policies of other interested states and the basic policies underly­ing the particular field of law in order to determine whether a contact has any significance for choice of law purposes.  This gives rise to a three-step process for conflicts analysis.  First, the issue is isolated and the conflict defined.  Next, the policies embraced in the laws in conflict are identified.  Finally, contacts of the respective jurisdictions are examined in order to determine which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.  
Barnes
, 133 Ill. App. 3d at 367.

Applying these principles to the present case, a conflict exists between Illinois law and Ohio law in that Illinois has rejected claims of parents for loss of consortium for injuries to a child (
Dralle v. Ruder
, 124 Ill. 2d 61 (1988)), while Ohio has identified a clear policy favoring filial consortium claims for its citizens.  In 
Gallimore v. Childrens Hospital Medical Center
, 67 Ohio St. 3d 244, 617 N.E.2d 1052, 1057 (1993), the Ohio Supreme Court held that a parent may recover damages in a deriva­tive action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child for a loss of filial consortium.  

Examining the significance of the contacts in light of the differing state policies, the record shows first that the Al-Amiris are residents of Ohio.  Within the area of tort law, the domiciles of the parties are generally consid­ered significant contacts for conflicts analysis because a jurisdiction will normally formulate tort policies with reference to the competing inter­ests of com­pensating its domiciliaries for injury and of limiting tort recoveries against its domiciliaries.  
Estate of Barnes
, 133 Ill. App. 3d at 368.  Accord­ingly, there are strong incentives to apply the tort law of a jurisdiction where all the parties are domiciled because this contact bears a strong rela­tion to the policies and purposes sought to be achieved in the jurisdiction's tort law.  See 
Ingersoll
, 46 Ill. 2d 42. The simple fact of domicile indicates the juris­diction's superior interest in having its laws applied in order to give effect to those tort policies.  In the present case, because the Al-Amiris live in Ohio, the State Farm insurance policies were sold in Ohio and are controlled by Ohio law, and Rannie's physical injury will be suffered and endured in Ohio, the trial court properly deter­mined that the laws of Ohio apply.

Next, the Insurance Companies contend that under Ohio law, the maximum amount of excess underinsured motorist coverage provided under all of the Ohio policies for the claim of Rannie Al-Amiri is $100,000, and that the trial court erred in determin­ing that each of the five Al-Amiri policies provides excess coverage of $100,000.

This issue is controlled by 
Savoie v. Grange Mutual Insur­ance Co.
, 67 Ohio St. 3d 500, 620 N.E.2d 809 (1993), which held that the stacking of underinsured limits of liability in inter­family cir­cumstances cannot be precluded where the policy lan­guage at issue is not clear and unambiguous.  Under the circum­stances presented here, the Al-Amiris may stack the Boury Ford Explorer policy with all five of their family insurance policies for the claim of Rannie Al-Amiri.

The Insurance Companies incorrectly argue that the Al-Amiris may only stack one policy on top of the Boury Ford Explorer Policy because 
intrafamily
 stacking may be prohibited by insur­ers under Ohio law.  
Intrafamily
 stacking only arises where the entire pool of policies against which claims are being made belong to 
the same family
.  Here, the Al-Amiris have asserted a claim against the Boury policy and against their own policies.  Thus, the 
inter­family
 stacking in the present case is permissi­ble.

"
EACH ACCIDENT" VS. "EACH PERSON
"

Next, the Insurance Companies contend that the trial court erred in determining that the claims for the deaths of Reena Boury and Suzanne Leder were subject to the "each accident" limit of the uninsured motorist coverage rather than the "each person" limit of the same.  The trial court ruled that the five next of kin of Reena Boury and the three next of kin of Suzanne Leder were entitled to a total recovery of $300,000 per policy, under the respective ap­plicable policies.

The relevant policy language provides as follows:

UNDERINSURED MOTOR VEHICLE - COVERAGE W

. . . 

Coverage W

The amount of coverage is shown on the declara­tions page under "Limits of Liability - W - Each Person, Each Accident".  Under "Each Person" is the amount of cover­age for all damages due to bodily injury to one 
person
.  
"Bodily injury
 to one 
person"
 includes all injury and damages to others resulting from this 
bodily injury
.  Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person" for all damages due to 
bodily injury
 to two or more 
persons
 in the same accident.

. . .

DEFINED WORDS

Bodily Injury - means bodily injury to a person and sickness, disease or death which results from it."

In support of their contention, the Insurance Companies rely on 
Creamer v. State Farm Mutual Automobile Insurance Co.
, 161 Ill. App. 3d (1987).  There, the plaintiffs' minor daughter was struck and injured by an uninsured motorist's vehicle.  Plain­tiffs demanded payment from State Farm for the minor's bodily injury, their loss of consortium and incurred medical expenses.  State Farm tendered the $25,000 uninsured motor vehicle policy limits for the minor's bodily injury but denied the plaintiffs' claim for addi­tional recov­ery.  The trial court granted State Farm's motion to dismiss, finding that the plaintiffs' recovery for the minor's bodily injury was limited to the amount specified per accident for bodily injury sustained by one person.  
Creamer
, 161 Ill. App. 3d at 223-24.

On appeal, plaintiffs argued that as parents of the minor insured, they are entitled to separate recovery under the policy for loss of consortium and medical expenses.  Plaintiffs contend­ed that the policy vaguely defined "bodily injury" as a personal injury and thus, that phrase encompassed their claims.

The insurance policy provided under "damages for bodily injury" that "an insured is legally entitled to collect from the owner or driver of an unin­sured motor vehicle."  Each insured is covered "for all damages due to bodily injury to one person."  The policy further provided that liability limits were not increased because more than one person is injured when an acci­dent occurs and shall not exceed the uninsured motor vehicle "coverage with the highest limit of lia­bility."  The policy defined bodily injury as "bodily injury to a person and sickness, disease or death which results from it."  
Creamer
, 161 Ill. App. 3d at 224.

This court construed the policy term "one person" as "one person injured," and determined that the policy term did not provide a means to extend an insurer's liability to loss of consor­tium.  This court held that loss of consortium is a person­al rather than a bodily injury and is generally included and subject to the policy limitations for bodily injury to one person, in affirming the judgment of the trial court.  
Creamer
, 161 Ill. App. 3d at 225.  

Based on 
Creamer
, the Insurance Companies argue that the total coverage available to the next of kin under any of the automobile policies would be the $100,000 "each person" limit.

Creamer
 is distinguishable in that the facts there
 did not involve the purchase of multiple policies, but rather, involved a situation where the full uninsured motorist coverage limits had been paid by the insurance company, and the parents sought addi­tional payment by reason of their loss of filial consor­tium, which was not covered under the policy at all.

Counterdefendants respond that where the per person cover­age, if applied to each of the beneficiaries, is equal or greater than the per accident cover­age, the per accident coverage should apply.  In support, counterdefen­dants rely on the Ohio case of 
Savoie v. Grange Mutual Insurance Co.
, 67 Ohio St. 3d 500, 620 N.E.2d 809 (1993).  
Savoie
 states that under 
Ohio law
, each person who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to 
Ohio law
 has a separate claim subject to a separate per person policy limit.  Because Ohio law applies, the trial court properly determined that the Al-Amiris, who are Ohio residents and are insured under State Farm's Ohio policies, are entitled to liability coverage on an "each accident" basis.

CROSS-APPEAL

Plaintiff and counterdefendants cross-appeal that portion of the trial court's orders of August 9 and 22, 1994, which declared that the Boury umbrella policy provided underinsured motorist coverage with a total limit of $1,000,000 for the claims of all of the occupants of the Ford Explorer at the time of the acci­dent.  Plaintiff and counterdefendants contend that the Boury umbrella policy provides $1,000,000 in underinsured motorist coverage to each insured.

The Boury umbrella policy provides in relevant part as fol­lows:

"
COVERAGE W - Underinsured Motor
 Vehicle

We will pay, up to the Coverage W limit, the amount which you and your passengers are legal­ly entitled to recover as bodily injury damages from the owner or driver of an underinsured motor vehicle.

These conditions apply:

1. You must maintain underlying limits for un­derin­sured motor vehicle coverage equal to the limits listed in the Declarations.  If these underlying limits are not main­tained, this coverage will not apply.

2. The retained limit for Coverage W is the total amount received for the loss from or on behalf of the liable party plus the amount received from your under­lying cov­erage, but not less than the amount of your re­quired underlying limits.

3. We will pay only the amount in excess of the re­tained limit up to the coverage W limit per loss.

4. This coverage will apply only when damages are paid by or on behalf of the owner or operator of the under­insured motor vehi­cle.

5. This coverage will apply in accordance with the terms and conditions of your underlying Under­in­sured Motor Vehicle Coverage.

OTHER CONDITIONS

* * *

5. Other Insurance.  This policy is excess over all other valid and collectible in­surance.

* * * 

15. Limit Per Loss.  This insurance applies sepa­rately to each insured, but our limit of liabil­ity per loss will be no greater than the indi­vidual cover­age limits shown in the Declara­tions."

Plaintiff and Counterdefendants contend that the "Limit Per Loss" provision is ambiguous, and that a reasonable interpretation is that each insured is entitled to a maximum underinsured motorist coverage recovery of $1,000,000, because each of the six injured insureds sustained a separate and distinct "loss" and each insured suffered an "accident."

The Insurance Companies respond that the Boury umbrella policy is a "single limit liability policy," which contains only a per accident limit, and not a per person limit.  The Insurance Com­panies explain that if only one of the six claimants had suffered serious injury, the entire $1,000,000 of underinsured motorist coverage provided by the umbrella policy would be available to that claimant without regard to any per person limit.  The Insurance Companies note that the term "loss" is defined in the policy as follows:

"'loss' means an accident that results in personal injury or property damage during the policy period.  This includes injurious ex­posure to conditions."

The Declarations Page of the umbrella policy provides that the limits of liability for underinsured motor vehicle coverage are $1,000,000.  The Insurance Companies respond that the "Limits of Liability" provision clearly and unambigu­ously provides that there is no per person limit; that the $1,000,000 is all that is avail­able per accident.

Neither party has cited authority which is instructive to the present case.  Plaintiff and counterdefendants cite 
Mason v. Home Insurance Co.
, 177 Ill. App. 3d 454 (1988), and 
Lyon v. Lumbermans Mutual Casualty Co.
, 207 Ill. App. 3d 730 (1990).  Both cases are distinguishable.  
Mason
 involved claims against a restaurant arising out of the serving of contaminated food.  The court determined that the cause of each injury was the serving of con­taminated food to the customer, not the improper preparation of food, therefore there were multiple occurrences of injuries, one for each customer served.  In the present case, there was a single cause of all of the claimants' injuries, i.e., the colli­sion between the Junious car and the Boury Ford Explorer.

In 
Lyon
, the plaintiff owned eight McDonald's restaurants, each insured under one policy, but each assessed a separate premium.  A theft from an armored car resulted in the loss of cash receipts from several of the stores, and be­cause of the manner in which the policy was formulated, the court construed the $10,000 loss limitation to apply on a per store basis rather than a per theft basis.  
The facts of 
Lyon
 are obviously distin­guishable from the facts of the present case.

Nevertheless, we agree with plaintiff and counterdefendants that the "Limit Per Loss" provision in the excess policy is am­biguous, in that the phraseology, "This insurance applies separate­ly to each insured," may be interpreted as providing a coverage of up to $1,000,000 to each insured for bodily injury damages.  We there­fore hold that up to $1,000,000 in umbrel­la coverage is avail­able to each insured who is entitled to bodily injury damages in connec­tion with the acci­dent of June 23, 1992, and reverse that portion of the trial court's order of August 9, 1994, granting summary judgment in favor of State Farm Fire on the limits of the Boury umbrel­la policy.

For all of the reasons stated herein, we therefore affirm the judgment of the trial court pertaining to the appeal of the In­surance Companies, reverse the portion of the judgment of the trial court as it pertains to the cross-appeal of the plaintiff and counterdefendants, and remand this matter for further pro­ceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

O'BRIEN, J., and GALLAGHER, J., concur.