STATE FARM FIRE & CASUALTY
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

Kelly J. SAYLES, Administratrix of the
estate of Bonnie E. Sayles; and An-
drew Smith, Defendants–Appellees.

Docket No. 01–7186.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 9, 2001.

Decided: May 2, 2002.

Daniel P. Scapellati, Hartford, Connecti-
cut (Stephen H. Broer, Halloran & Sage,
Hartford, Connecticut, on the brief), for
Plaintiff–Appellant.

Gerald M. Fox, III, Stamford, Connecti-
cut, (Fox & Fox, Stamford, Connecticut,
on the brief), for Defendant–Appellee
Sayles.

Brian J. Isaac, New York, New York
(William Groner, Michael L. Taub, Worby
Groner & Edelman, New York, New York,
on the brief), for Defendant–Appellee
Smith.

Before: NEWMAN and KEARSE,
Circuit Judges, and CARMAN, Chief
Judge *.

* Honorable Gregory W. Carman, of the United
States Court of International Trade, sitting by
designation.

KEARSE, Circuit Judge.

Plaintiff State Farm Fire & Casualty Insurance Company ("State Farm") appeals from a judgment entered in the United States District Court for the District of Connecticut, Stefan R. Underhill, *Judge,* denying its request for a declaratory judgment that defendants Kelly J. Sayles, as administratrix of the estate of Bonnie E. Sayles, and Andrew Smith (collectively the "Claimants") are not entitled to payment under the underinsured motorist provisions of a personal liability umbrella policy issued to Bonnie E. Sayles ("Sayles"), in light of the Claimants' receipt of certain payments under a personal liability umbrella insurance policy of a third-party tortfeasor. The district court granted summary judgment in favor of the Claimants, ruling that State Farm and Sayles did not intend that State Farm's obligations be reduced by amounts available under a tortfeasor's personal liability umbrella insurance policy. For the reasons that follow, we disagree and reverse.

## I. BACKGROUND

The underlying facts have been stipulated by the parties. In March 1998, a vehicle owned and occupied by Sayles, and driven by Smith, was struck by a vehicle driven by one Christine Parlato. Sayles and Smith were injured, Sayles fatally. Prior to the time of the accident, Sayles had been issued a personal liability umbrella policy by State Farm (the "Sayles State Farm Policy" or "Policy"). Smith, as a person driving Sayles's car with her permission, was an insured within the meaning of the Policy.

Parlato was insured under a personal automobile liability policy with coverage liability limited to $300,000. She was also insured under a personal liability umbrella policy with a limit of liability coverage in the amount of $1,000,000. In connection with the accident, the Claimants received payments under these two policies totaling the policy limits, *i.e.,* $1,300,000, with the Sayles estate receiving $700,000, and Smith receiving $600,000.

### A. *The Sayles State Farm Policy and the Present Controversy*

It is undisputed that "Coverage U" in the State Farm umbrella policy issued to Sayles "afforded uninsured motorist coverage to the insured with a limit of $1,000,000.00" (Parties' Form 26(F) Statement of Undisputed Facts ¶ 5). There is also no dispute that the term "uninsured" included "underinsured." To the extent pertinent here, the Policy defined an "uninsured motor vehicle" to include "a land motor vehicle, the ownership, maintenance or use of which is ... insured ... for bodily injury liability at the time of the accident, but ... the limits of liability ... are less than the limits *you* carry for uninsured motor vehicle coverage under this policy." (Sayles State Farm Policy, **"UNINSURED MOTOR VEHICLE COVERAGE"** Definition ¶ 1.b.(2)(a) (emphasis in original).)

In a section entitled **"Coverage U–Uninsured Motor Vehicle,"** the Policy stated that State Farm

> will pay, up to the Coverage U limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an *uninsured motor vehicle.*
>
> These conditions apply:
>
> . . . .
>
> 2. The *retained limit* for Coverage U is the total amount received for the loss from or on behalf of the liable party plus the amount received from your underlying coverage, but not less than the amount of your required underlying limits.

3. We will pay only the amount in excess of the *retained limit* up to the Coverage U limit per *loss*.

(*Id.* Coverage U & ¶¶ 2–3 (emphases in original).)

In connection with the March 1998 accident, the Claimants requested payment of underinsured motorist benefits from State Farm under the Policy. State Farm rejected the requests and commenced the present action, seeking a declaratory judgment that the Claimants were not entitled to such payment.

After stipulating to the underlying facts, the parties filed cross-motions for summary judgment. State Farm took the position that the Claimants were entitled to nothing under the Sayles State Farm Policy because they had collected a total of $1,300,000 from Parlato under her policies, including her umbrella policy, and State Farm's liability under Coverage U was limited to $1,000,000 minus the total amount recovered from Parlato. The Claimants took the position that the Sayles State Farm Policy's underinsured motorist coverage turns on the amount of third-party insurance coverage on that party's vehicle, not on the amount of personal insurance carried by the third party herself. They pointed out that Parlato's automobile insurance policy had a limit of $300,000, *i.e.*, less than the $1,000,000 coverage provided by Coverage U of the Sayles State Farm Policy. They thus argued that Parlato was underinsured within the meaning of the Sayles State Farm Policy and, to the extent pertinent to this appeal, that the $1,000,000 they had received under Parlato's umbrella policy was not to be taken into account in connection with the Sayles State Farm Policy's uninsured motorist coverage.

## B. *The Decision of the District Court*

In a Ruling on the Parties' Cross Motions for Summary Judgment, dated January 8, 2001 ("Ruling"), the district court denied State Farm's motion for summary judgment in its favor and granted the Claimants' motions for summary judgment dismissing the complaint. The court stated that under Connecticut law, " '[i]t is the function of the court to construe the provisions of the contract of insurance,' " viewing the contract " 'in its entirety' " and giving the " 'policy words ... their natural and ordinary meaning,' " and that the " 'determinative question is the intent of the parties.' " Ruling at 3 (quoting *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.*, 247 Conn. 801, 805–06, 724 A.2d 1117, 1119–20 (1999)).

The district court found that "the parties did not intend that the limit of liability available under the tortfeasor's umbrella policy should be included in determining whether the tortfeasor's vehicle was 'uninsured.' " Ruling at 3–4. In making this finding, the court found phrasing in the Policy's definition of "uninsured motor vehicle" to be the same as language used elsewhere in the Policy to define an automobile insurance policy, and it inferred that the parties intended the "uninsured motor vehicle" definition's reference to insurance to be limited to automobile insurance. The court stated as follows:

Under Coverage U of the State Farm Policy, State Farm agreed to pay " ... the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an *uninsured motor vehicle.*" *"Uninsured Motor Vehicle "* is defined, in pertinent part, as " ... a land motor vehicle, the ownership, maintenance or use of which is ... b. insured or bonded for bodily injury liability at the time of the accident, but (1) the limits of liability ... are less than the limits *you* carry for uninsured motor

vehicle coverage under this policy...." Thus the State Farm Policy provides that the limits of liability available for policies that insure the "ownership, maintenance or use" of the tortfeasor's vehicle for "bodily injury liability at the time of the accident," are compared to the coverage available under the State Farm Policy in order to determine whether the tortfeasor's vehicle is "uninsured."

Reading the entirety of the State Farm Policy, the court concludes that the parties did not intend that the limit of liability available under the tortfeasor's umbrella policy should be included in determining whether the tortfeasor's vehicle was "uninsured." The State Farm Policy provides that only the limits of liability from policies insuring, "the ownership, maintenance or use of," "a land motor vehicle" for "bodily injury liability," are to be compared to the liability limit under the State Farm Policy. This precise phraseology was used elsewhere in the State Farm Policy to define the underlying automobile liability policy Sayles was required to carry with the State Farm Policy. By definition, such underlying insurance would not include umbrella or other excess coverage. Thus, by using the phrase "... a land motor vehicle, the ownership, maintenance or use of which is," insured against "bodily injury liability," the parties intended to refer only to primary automobile liability policies. To read the State Farm Policy any other way would render it internally inconsistent.

Furthermore, the reading urged by State Farm would also fail to give effect to the parties' expressed intent to distinguish between primary automobile liability policies and excess, umbrella or other potentially applicable coverage. When the State Farm Policy contemplates con-

sideration of payments made pursuant to coverage beyond the tortfeasor's primary automobile policy, the parties used broad language to clearly include such payments. For example, the State Farm Policy provides that the "retained limit for Coverage U is *the total amount received for the loss from or on behalf of the liable party* plus the amount received from your underlying coverage ...." (emphasis added). This language is much broader language than that under sub-part (b)(1) of the definition of "uninsured motor vehicle."

Ruling at 3–4.

The court concluded that its interpretation of the Sayles State Farm Policy as excluding consideration of the amounts the Claimants had received under Parlato's umbrella policy in determining State Farm's uninsured motorist obligation was "consistent with well established Connecticut law," which holds that umbrella policies " 'serve a purpose distinct from that served by policies that exclusively cover liability from damages arising out of the ownership[,] maintenance or [operation] of an automobile.' " Ruling at 4–5 (*quoting Curran v. Aetna Casualty & Surety Co.*, 222 Conn. 657, 664–65, 610 A.2d 1198, 1202 (1992)).

Judgment was entered in favor of the Claimants, and this appeal followed.

## II. DISCUSSION

On appeal, State Farm argues principally (1) that the Sayles State Farm Policy is unambiguous, making it inappropriate for the district court to have resorted to interpolation and policy considerations; and (2) that the Policy's definition of "uninsured motor vehicle" and its provision as to the limit of State Farm's obligation to pay could not reasonably be read as excluding from the calculation of that obligation the

amount recoverable under an underinsured motorist's personal umbrella liability policies. For the reasons that follow, we agree.

■ Under well-settled Connecticut law, "[i]t is the function of the court to construe the provisions of the contract of insurance.... The [i]nterpretation of an insurance policy ... involves a determination of the intent of the parties as expressed by the language of the policy ... *[including] what coverage the ... [insured] expected to receive and what the [insurer] was to provide,* as disclosed by the provisions of the policy.... [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy ... [giving the] words ... [of the policy] their natural and ordinary meaning."

*QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. 343, 351–52, 773 A.2d 906, 913–14 (2001) (quoting *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.,* 247 Conn. 801, 805–06, 724 A.2d 1117, 1119–20 (1999)) (emphasis ours). Although " 'any ambiguity in the terms [of the policy must be construed] in favor of the insured,' " *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. at 352, 773 A.2d at 914 (quoting *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.,* 247 Conn. at 806, 724 A.2d at 1120), " '[a] necessary predicate to this rule of construction, ... is a determination that the terms of the insurance policy are indeed ambiguous,' " *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. at 352 n. 11, 773 A.2d at 914 n. 11 (quoting *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.,* 247 Conn. at 806, 724 A.2d at 1120); *see also Israel v. State Farm Mutual Automobile Insurance Co.,* 239 F.3d 127, 133 (2d Cir.2000) ("Under Connecticut law, terms in a policy are to be construed from the perspective of a reasonable lay-

person in the position of the purchaser of the policy, ... and any ambiguity in the policy's terms must be construed against the insurer as drafter of the contract.... On the other hand, these rules may not be applied unless the terms or provisions in question are indeed ambiguous ...." (internal quotation marks omitted)). A contract is not ambiguous merely because different interpretations are advocated by the parties. *See, e.g., id.; QSP, Inc., v. Aetna Casualty & Surety Co.,* 256 Conn. at 352 n. 11, 773 A.2d at 914 n. 11. Rather, it is ambiguous only when it is reasonably susceptible to more than one reading. *See, e.g., Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 255 Conn. 295, 305, 765 A.2d 891, 897 (2001).

Where the terms of an insurance policy are unambiguous, the policy language must be given its natural and ordinary meaning. *See, e.g., Cunninghame v. Equitable Life Assurance Society,* 652 F.2d 306, 308 (2d Cir.1981); *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. at 351–52, 773 A.2d at 913–14; *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.,* 247 Conn. at 806, 724 A.2d at 1120. Terms that are not defined in the policy but are nonetheless clear "must [be] give[n] effect" in accordance with "the reasonable and natural interpretation of such language." *Coregis Insurance Co. v. American Health Foundation, Inc.,* 241 F.3d 123, 127 (2d Cir.2001); *see, e.g., Hammer v. Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 583, 573 A.2d 699, 704 (1990).

The determination of whether an insurance policy is ambiguous is a matter of law for the court. *See, e.g., QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. at 352, 773 A.2d at 914; *Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 255 Conn. at 305–06, 765 A.2d at 897. A court of appeals reviews *de novo* questions as to the ambiguity and meaning of the

language of a contract. *See, e.g., Gil Enterprises, Inc. v. Delvy,* 79 F.3d 241, 245 (2d Cir.1996); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir.1991); *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. at 352, 773 A.2d at 914; *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.,* 247 Conn. at 806, 724 A.2d at 1120.

■ In the present case, we conclude that the pertinent terms of the Sayles State Farm Policy are unambiguous and that the district court did not give the language of either (a) the definition of uninsured motor vehicle, or (b) the Coverage U statement of what State Farm would be obligated to pay, their natural and ordinary meanings.

The pertinent definition stated that an "uninsured motor vehicle" means a land motor vehicle whose "ownership, maintenance or use ... is ... insured ... for bodily injury liability at the time of the accident," but "the limits of liability ... are less than the limits you carry for uninsured motor vehicle coverage under this policy" (Policy Definition ¶ 1.b.(2)(a) (emphasis omitted)). This provision referring to ownership, maintenance, or use that is "insured for bodily injury liability" does not state any limitation as to the type of policy providing such insurance. In the absence of any such limitation, the natural and ordinary meaning of the phrase "insured for bodily injury liability" is insured for such liability by any policy.

The district court, in inferring instead that the parties intended "insured for bodily injury liability" to mean only insured by an automobile policy, stated that "[t]his precise phraseology was used elsewhere in the State Farm Policy to define the underlying automobile liability policy Sayles was required to carry with the State Farm Policy," Ruling at 4. We have several difficulties with this inference.

First, the other phraseology to which the district court apparently was referring, located in a "**POLICY ENDORSEMENT**" definition of an "automobile liability" policy, is not the same as the phraseology used to describe the insurance pertinent to an "uninsured motor vehicle." The Endorsement stated that " 'AUTOMOBILE LIABILITY' means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle...." (Policy Endorsement Definitions ¶ 16.a.) Thus, instead of the phrase "ownership, maintenance or use," which appears in the definition of "uninsured motor vehicle," the Endorsement definition of "automobile liability" policy adds the term "operation." And instead of referring to "bodily injury liability," as does the definition of "uninsured motor vehicle," the Endorsement definition of "automobile liability" policy refers simply to "liability," without limitation as to type of injury.

Second, it does not appear that the Policy Endorsement definition to which the district court referred was meant to be read into definitions that appeared elsewhere in the Policy. The Endorsement definitions were introduced by a paragraph that stated "[w]hen shown on the **Declarations** as '*REQUIRED UNDERLYING INSURANCE POLICIES*', these terms are defined as follows." ("Declarations" emphasized in original; other emphasis ours.) There is no indication in the Endorsement that the definitions that followed, including that of "automobile liability" insurance, were intended to be applied to any other section of the Policy.

Third, the "uninsured motor vehicle" definition's reference to insurance could not logically have been intended to refer solely to automobile liability policies as

defined in the Policy Endorsement because the former stated that "[t]his coverage will also apply to the operation of your Recreational Motor Vehicles if the listing also states, 'including Recreational Motor Vehicles'" (Uninsured Motor Vehicle first ¶ (emphasis omitted)), whereas the Policy Endorsement stated categorically that the term "Automobile Liability Policy does not include a Recreational Motor Vehicle Liability Policy as defined below" (Policy Endorsement Definitions ¶ 16.a.).

We see nothing in these definitions to indicate that the "uninsured motor vehicle" definition's use of the unqualified phrase "insured for bodily injury liability" meant only insured for such liability under an automobile liability policy. And it cannot be denied that Parlato's umbrella policy, as well as her automobile liability policy, provided insurance for bodily injury liability with respect to the ownership or use of her vehicle; the Claimants collected under each of these policies for injuries caused by Parlato's vehicle.

Finally, it does not appear that the district court gave effect to the Coverage U provision that specified the amount that State Farm would be obligated to pay, a provision that is consonant with the natural reading of "insured for bodily injury liability" as meaning insured for such liability by any policy. In the court's statement that "[u]nder Coverage U of the State Farm Policy, State Farm agreed to pay '... the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an *uninsured motor vehicle*,'" Ruling at 3 (quoting Policy Coverage U (emphasis in Policy; ellipsis in Ruling)), the Policy language omitted from the court's quote, represented by the ellipsis, is "up to the Coverage U limit." (*See* Sayles State Farm Policy), "**UNINSURED MOTOR VEHICLE COVERAGE**" Cov-

erage U ¶ 3 ("We will pay only the amount in excess of the *retained limit* up to the Coverage U limit per *loss*." (emphases in original).) As to the Coverage U limit, the Policy provided, in pertinent part, that "[t]he retained limit for Coverage U is the *total* amount received for the loss from or on behalf of the liable *party* ...." (*Id.* ¶ 2 (emphases ours; original emphasis omitted).) Giving effect to the ordinary meaning of the terms "*total* amount" paid to the insureds by or on behalf of the "liable *party*" (emphases added), we conclude that State Farm agreed to pay only so much of the $1,000,000 Policy limit as exceeded the total amount that the Claimants received from or on behalf of Parlato as the liable party, not just so much as exceeded the amount received only from her auto insurer.

Because the Sayles State Farm Policy unambiguously required State Farm to pay, to the extent pertinent to this case, only so much of the $1,000,000 Policy limit as exceeded the total amount that the Claimants received from Parlato's insurers, and the Claimants received a total of $1,300,000 from her insurers, State Farm was entitled to a judgment declaring that it owed the Claimants nothing under the uninsured motorist coverage provisions of the Sayles State Farm Policy.

## CONCLUSION

We have considered all of defendants' arguments on this appeal and have found them to be without merit. The judgment of the district court is reversed, and the matter is remanded for the entry of judgment in favor of State Farm, declaring that the Claimants are entitled to nothing under the underinsured motorist provisions of the Sayles State Farm Policy.