ISRAEL

v.

**STATE FARM MUTUAL AUTO- MOBILE INSURANCE COMPANY et al.**

**No. 3:98CV302 (JBA).**

United States District Court, D. Connecticut.

Aug. 26, 2003.

David M. Cohen, Daniel M. Young, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for plaintiff.

Daniel P. Scapellati, James M. Celentano, Halloran & Sage, Hartford, CT, for defendants.

### Ruling on Motion for Summary Judgment [Doc. # 82]

ARTERTON, District Judge.

After he was injured and his wife was killed in an automobile accident, David Israel commenced this action against State Farm,[1] which had issued a personal umbrella policy to his parents, Lenore and William Gunther. Following remand from the Second Circuit,[2] State Farm moved for summary judgment on the narrow issue of the maximum possible damages available to plaintiff under the policy. State Farm asserts that a proper construction of the policy terms at issue results in a maximum possible recovery of $400,000, while plain-

---

1. The named defendants in the suit are State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company. The distinction between the two is not relevant for the purposes of this motion, and they will be collectively referred to as "State Farm."

2. *See Israel v. State Farm Mut. Auto. Ins. Co.,* 293 F.3d 595 (2d Cir.2002) ("Israel III"). The rather lengthy procedural history of this case (which includes a certification by the Second Circuit, 239 F.3d 127 (2000) ("Israel I"), and an answer to the certified question by the Connecticut Supreme Court, 259 Conn. 503, 789 A.2d 974 (2002) ("Israel II")) is not recounted here.

tiff contends that State Farm's potential liability is $1 million. As set out below, the Court concludes that the maximum possible recovery is $600,000, and the motion is therefore granted in part and denied in part.

## I. Background[3]

Plaintiff, a commercial pilot, maintained a home in Florida with his wife, but often resided with his parents in their Connecticut home. In May 1996, plaintiff was injured and his wife was killed when the car they were driving was struck by an automobile driven by Melvin Root, who was impaired and at complete fault. Root's insurance paid $400,000 ($150,000 to plaintiff and $250,000 to the estate of his wife), an amount substantially short of their actual damages.

Plaintiff's parents (Lenore and William Gunther) are the named insureds on a personal umbrella policy issued by State Farm. Because the policy defines an "insured" as, *inter alia*, the named insured's relatives who are members of the named insured's household,[4] David Israel is an "insured" entitled to coverage under the policy by virtue of his residence in his parents' Stamford home.[5] The umbrella policy provides uninsured motor vehicle coverage (denominated "Coverage U") with a stated limit of $1,000,000, but requires the maintenance of underlying unin-

sured/underinsured motorist coverage. While much of the earlier stages of this litigation addressed the consequence of plaintiff's admitted failure to maintain the required underlying insurance, it has been conclusively established that because of ambiguity in the policy,[6] the policy must be read in such a way as to resolve the ambiguity in favor of providing coverage.[7]

The only remaining question of law to be resolved in this case is the maximum amount of damages for which State Farm may be liable under a proper construction of the policy, which implicates three discrete provisions of the policy. First, Coverage U provides that State Farm "will pay, up to the Coverage U limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an uninsured motor vehicle,"[8] and then subjects that general statement to the following proviso:

2. The retained limit for Coverage U is the total amount received for the loss from or on behalf of the liable party plus the amount received from your underlying coverage, but not less than the amount of your required underlying coverage.

3. We will pay only the amount in excess of the retained limit up to the Coverage U limit per loss.

---

3. For the purposes of this motion, the following facts are undisputed.

4. *See* Personal Umbrella Liability Policy [Doc. # 83 Ex. 1] ("Policy") at A4, "Definitions," ¶ 5.

5. *See Israel I*, 239 F.3d at 132 ("Given that Israel spent a majority of his time at [his parents'] Stamford residence, and exhibited significant day-to-day connections with the household, we agree with the district court that he is appropriately considered a resident of the Stamford home and, thus, an 'insured' under the terms of the umbrella policy.").

6. One provision in the policy stated that "[i]f these underlying limits are not maintained, this coverage will not apply," Policy at A14, "Coverage U—Uninsured Motor Vehicle," while another provision stated that "[i]f the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss," Policy at A9, "Your Duties to Us," ¶ 4.

7. *See Israel III*, 293 F.3d at 599–600.

8. Policy at A14, "Coverage U—Uninsured Motor Vehicle."

Policy at A14, "Coverage U—Uninsured Motor Vehicle." Second, the umbrella policy states that the policy "applies separately to each insured, but [State Farm's] limit of liability per loss will be no greater than the individual coverage limit shown in the Declarations." [9] Finally, resolving the ambiguity in the policy (*see supra* note 6) in favor of the insured requires the Court to give effect to the provision in the policy stating if an insured fails to maintain the required underlying limits, the insured "will be responsible for the underlying limit amount of any loss."

State Farm argues that its maximum liability is $400,000, because its base exposure of $1 million is reduced by: (1) $400,000 already paid by Root's insurance company; (2) $200,000 in underlying insurance coverage that plaintiff should have had at the time of the accident. Plaintiff attacks both contentions and raises a third issue: whether there are two "insureds" (David Israel and his wife, Susan Israel), each entitled to have the policy calculations performed separately.

As set out below, the Court concludes that: (1) Susan Israel was not an "insured" entitled to separate application of the policy calculations, as it is undisputed that *she* did not reside in the Gunther household; (2) State Farm's exposure is reduced by the $400,000 paid by Root's insurance; and (3) State Farm's exposure is not further reduced by $200,000 because of plaintiff's failure to maintain the underlying coverage required by the umbrella policy.

II. Analysis

A. Separate Insureds

■ The umbrella policy states that it "applies separately to each insured, but [State Farm's] limit of liability per loss will

be no greater than the individual coverage limit shown in the Declarations." Although plaintiff contends that this proviso requires separate application of each of the underlying calculations (so long as the total payment does not exceed the referenced $1 million individual coverage limit), this argument lacks merit because Susan Israel is not an "insured" and thus the policy does not apply "separately" to her. The pertinent provisions of the policy provide that an "insured" is either the "named insured" (Lenore and William Gunther) or the named insured's relatives who are residents of the named insured's household. While Susan Israel is a relative of the named insureds (their daughter-in-law), it has never been argued that she resided in their Stamford home.

Plaintiff argues, however, that because Susan Israel's injuries are compensable under the policy as a "passenger" of an insured,[10] she is enough of an "insured" to qualify for the separate application of the policy. This argument fails because the very "separate application" provision upon which plaintiff relies uses the word "insured" in bold, which indicates that it is being used as a previously-defined term. The referenced definition (defining "insured" as either the named insured, certain residents of the named insured's household, and certain persons operating the named insured's automobile) does not include passengers. While plaintiff argues that "there is no rationale or justifiable reason to apply the Policy differently because the two claimants are not both 'insureds,'" [Doc. # 95] at 3, the only justification advanced for applying the policy "separately" in the first place is that provision of the policy which specifies that the

---

**9.** Policy at A11, "Other Conditions," ¶ 15.

**10.** Coverage U specifies that State Farm will pay amounts which "you *and your passengers* are legally entitled to recover ...," thus making Susan Israel's injuries compensable, even though she is not an "insured."

policy should apply separately to each *insured*.

Plaintiff cites *Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill.App.3d 903, 224 Ill. Dec. 677, 682 N.E.2d 238 (1997), in which the court applied the policy separately to each claimant, even though the policy contained the same "applies separately to each insured" language and it appears from the facts of the case that only one such claimant was an "insured." While *Jones* reached the result plaintiff desires, the *Jones* court never addressed the question of whether each of the claimants were "insureds" under the policy, and the defendant in that case apparently did not raise the issue. In light of the clear language of the policy, the Court will not follow the result reached in *Jones*.

### B. $400,000 Reduction

■ Coverage U provides that State Farm "will pay, up to the Coverage U limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an uninsured motor vehicle," subject to the retained limit clause following immediately after, which provides that State Farm will "pay only the amount in excess of the retained limit up to the Coverage U limit per loss." The "retained limit" is specified to include "the total amount received for the loss from or on behalf of the liable party," which in this case is $400,000 paid by Root's insurance company.

Given the provision that State Farm "will pay only the amount in excess of the retained limit up to the [$1 million] limit per loss," the plain language of the policy provides that a retained limit of $400,000 would require State Farm to pay a further

$600,000, which would represent "the amount in excess of the [$400,000] retained limit [that is] up to the [$1 million] limit per loss." Plaintiff, however, argues that the "retained limit" must be deducted from the total losses caused by the accident, rather than being deducted from the $1 million maximum coverage. Under plaintiff's reasoning, for example, if a plaintiff's actual loss was $10 million, plaintiff would subtract a $400,000 retained limit from $10 million, to leave an uncompensated loss of $9.4 million, which would then result in a payment of the full $1 million Coverage U limit. In support of this construction, plaintiff asserts that if the policy is read to provide only for payment over and above the retained limit, the $1 million Coverage U limit would be an illusory promise because there is no circumstance in which State Farm itself would pay the full $1 million Coverage U limit. The Court disagrees. The $1 million Coverage U limit does not constitute an "illusory promise" because the express terms of the policy convey that the $1 million figure reflects a guarantee that an insured's losses up to that amount will be fully compensated, whether exclusively from other sources or from a combination of other sources and State Farm.[11]

Plaintiff's proffered construction of the retained limit language is in conflict with *State Farm Fire & Cas. Ins. Co. v. Sayles*, 289 F.3d 181 (2d Cir.2002), involving a personal umbrella policy issued by State Farm which contained the identical uninsured motorist retained limit provisions as the policy at issue in this case. Because the tortfeasor (Parlato) carried both a personal automobile policy with $300,000 in coverage and a personal um-

---

**11.** Plaintiff also relies on *O'Hanlon v. Hartford Accident & Indem. Co.*, 639 F.2d 1019 (3d Cir.1981), which applied Delaware law and utilized the construction plaintiff urges. The *O'Hanlon* result is contrary to the Second Circuit's recent construction under Connecticut law of this precise retained limit policy language, discussed below.

brella policy with $1 million in coverage, Sayles and her co-victim (Smith) received $1.3 million from Parlato's two insurance policies. Sayles, however, contended that she was entitled to further compensation from her own personal umbrella policy, which provided $1 million in uninsured motorist protection. State Farm commenced a declaratory judgment action seeking a declaration that it owed nothing because its limit was $1 million and Sayles had already exceeded that amount by her receipt of $1.3 million from Parlato. The Second Circuit reversed without remand the district court's judgment in Sayles' favor. In its discussion of the retained limit language, the Second Circuit concluded that "State Farm agreed to pay only so much of the $1,000,000 Policy limit as exceeded the total amount that the Claimants received from or on behalf of . . . the liable party . . . ." *Id.* at 187.

Plaintiff argues that the quoted language from *Sayles* is wrongly-decided dicta, asserting that the only issue before the Second Circuit was whether the tortfeasor was underinsured. Plaintiff's dicta argument, however, fails to account for the court's ultimate disposition of the case (reversal without remand), which granted judgment to State Farm, the declaratory judgment plaintiff. Because adoption of Israel's reading of the retained limit clause would have left open the possibility that Sayles could still receive money from the State Farm policy had her damages been high enough,[12] the Second Circuit's implicit rejection of Israel's construction of the retained limit language was necessary to its decision to reverse without remand, and

thus *Sayles'* contrary reading of the retained limit clause was clearly necessary to its holding and is not dicta.

### C. $200,000 Reduction

■ State Farm next asserts that because the policy required plaintiff to maintain $200,000 in uninsured motorist coverage, and because the retained limit is defined to include "the amount received from your underlying coverage," the retained limit should be increased by $200,000, thus reducing State Farm's maximum exposure by that amount. The policy, however, contains no provision for automatically adding the required (but unpurchased) amount of underlying coverage to the retained limit, instead specifically providing that the amount of the retained limit may never be less than the amount of the required underlying coverage (even if such coverage is never purchased):

> The retained limit for Coverage U is the total amount received for the loss from or on behalf of the liable party plus the amount received from your underlying coverage, *but not less than the amount of your required underlying coverage.*

Thus, contrary to State Farm's reading of this retained limit definition, the consequence for failure to buy the required coverage is only that the retained limit will never be less than the required underlying coverage and an injured party who has no recourse to any other coverage source will simply be uncompensated in this amount.[13]

State Farm next points to the portion of the policy which states that "[i]f the required underlying limits are not main-

---

12. Assuming that the damages in *Sayles* were, e.g., $5 million, Israel's reading of the retained limit language would have required State Farm to pay the full $1 million policy limit, because the total losses ($5 million) minus the retained limit ($1.3 million) yields an uncompensated loss of $3.7 million, which is greater than the policy limit of $1 million.

Significantly, the Second Circuit did not remand for such a damages analysis.

13. Hence, if nothing had been received from Root, the retained limit would nonetheless treat the "amount of [the] required underlying coverage" as part of the retained limit (and thus the responsibility of plaintiff).

tained, you will be responsible for the underlying limit amount of any loss," and argues that because plaintiff did not maintain the limits as required, he is "responsible for the underlying limit amount" ($200,000), and therefore any possible payment should be further reduced (in addition to the $400,000 reduction discussed *supra*) by $200,000. State Farm's argument ignores the fact that "the underlying limit amount" of this particular loss has already been fully satisfied by the payment from Root's insurance company, which paid $400,000—well over the $200,000 required underlying limit. Inasmuch as plaintiff's "responsib[ility] for the underlying limit" has been fully satisfied by the payment from Root's insurance company, there is no further responsibility for plaintiff, and no consequent reduction of State Farm's potential liability.

III.  Conclusion

State Farm's maximum possible liability to plaintiff is $600,000, because (1) Susan Israel is not an "insured" entitled to separate application of the policy, (2) the retained limit of $400,000 (the payment by Root's insurance company) is subtracted from the Coverage U limit of $1 million (not from plaintiff's actual losses), and (3) the retained limit is not further increased (nor is State Farm's maximum exposure further reduced) by the amount of underlying insurance plaintiff should have maintained. The motion for summary judgment [Doc. # 82] is therefore GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.