# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*State Farm Mutual Automobile Insurance Co. v. McFadden*, 2012 IL App (2d) 120272

---

| | |
|---|---|
| Appellate Court Caption | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. DIANA McFADDEN and TODD McFADDEN, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-12-0272 |
| Filed | October 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The antistacking clauses in each of defendants' five insurance policies capping the underinsured motorist coverage at $100,000 effectively limited their underinsured motorist coverage to $100,000 for the accident in which one of the insureds was struck by another motorist while riding one of defendants' insured motorcycles, and based on the payment of $250,000 pursuant to the other motorist's insurer, no underinsured motorist coverage applied. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-MR-841; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Lulay Law Offices, of Naperville (Michael B. Lulay, of counsel), for appellants. |
| | Taylor Miller LLC, of Chicago (Frank C. Stevens, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Dianna McFadden was injured in an auto crash. She and her husband, defendant Todd McFadden, sought to collect underinsured motorist coverage from plaintiff, State Farm Mutual Automobile Insurance Company. The McFaddens claimed that, because they had five separate policies with State Farm, each with a $100,000 limit of liability for underinsured motorist coverage, their total limit was $500,000, and it was this amount that should be offset against the tortfeasor's liability limit to determine whether the tortfeasor was underinsured.

¶ 2      State Farm filed a complaint for declaratory judgement, presenting two bases by which the McFaddens were unable to accumulate more than $100,000 in underinsured motorist coverage to be offset against the tortfeasor's $250,000 policy, resulting in no underinsured coverage. For the reasons that follow, we agree with State Farm's primary basis for denying coverage: as a matter of law, express "antistacking" language in the policies prohibits the aggregation, or "stacking," of said policies to provide total underinsured coverage in excess of the amount set forth in the single policy providing the highest limit of liability, *i.e.*, $100,000. One basis by which to deny coverage is sufficient. Therefore, we need not address the second basis: *in the absence of express antistacking language*, default stacking methodology would not result in coverage that exceeds $100,000. There *is* antistacking language, and this antistacking language conflicts with either stacking methodology proposed by the parties, making a determination on stacking methodology purely advisory. We affirm the denial of coverage.

¶ 3                                    I. BACKGROUND

¶ 4      In May 2009, Mark Nies (not a party to this case) negligently crashed into a motorcycle driven by Dianna McFadden. Nies carried automobile insurance coverage in the amount of $250,000, and his insurer paid the McFaddens that amount in settlement. However, the

-2-

McFaddens' damages exceeded $250,000, and they sought to collect an additional $250,000 from their own insurer, State Farm. The McFaddens claimed that Nies was underinsured by $250,000.

¶ 5 State Farm had issued to the McFaddens five automobile insurance policies, one for each of their five vehicles:

| Policy No. | Named Insured | Vehicle | Underinsured Limit |
|---|---|---|---|
| ***D10-13 | Dianna | 2004 Harley Davidson (in crash) | $100,000 |
| ***F03-13B | Todd and Dianna | 2008 Ford Escape | $100,000 |
| ***E02-13E | Todd | 1995 Saturn | $100,000 |
| ***F09-13 | Dianna | 1997 Honda | $100,000 |
| ***C01-13 | Todd | 1995 Harley Davidson | $100,000 |

Each policy contained its own "declarations sheet," listing the relevant vehicle, premium amount, and underinsured coverage amount. The declarations sheet is the first page of each policy and can be thought of as a summary of the document. Each declarations sheet showed that its respective policy contained $100,000 in underinsured coverage. The McFaddens reasoned that, because they owned five policies, each with $100,000 in underinsured coverage, they carried a total of $500,000 in underinsured coverage. The McFaddens concluded that Nies was therefore underinsured by $250,000 (*i.e.*, their total $500,000 underinsured coverage minus $250,000 from Nies) and that State Farm should pay them that difference.

¶ 6 In June 2011, State Farm filed a complaint for declaratory judgment, arguing that: (1) express language in each of the McFaddens' policies, which will be set forth in our analysis, prohibits the aggregation or "stacking" of said policies to provide total underinsured coverage in excess of the amount set forth in the single policy providing the highest coverage, *i.e.*, $100,000 (*Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005); *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 229-30 (1995)); and, (2) even if the McFaddens' policies did not contain said antistacking language, precedent requires that Nies's policy be offset one-by-one against each policy's underinsured coverage amount *before* a policy amount may be stacked with the others, and, here, each $100,000 underinsured coverage amount is less than $250,000, so no offset amount ever accumulates (*Jones v. Country Mutual Insurance Co.*, 371 Ill. App. 3d 1096 (2007); *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d 185 (2000) (ruling based on the statutory definition of "underinsured motor vehicle" in section 143a-2(4) of the Illinois Insurance Code (215 ILCS 5/143a-2(4) (West 2008)))). In other words, State Farm presented two bases by which the McFaddens were prevented from accumulating more than $100,000 in underinsured coverage to be offset against Nies's $250,000 policy, resulting in no underinsured coverage.[1]

---

[1] Although four of the policies were tied to motor vehicles that were not in the accident, State Farm did *not* present this as a basis to deny underinsured coverage in excess of $100,000. As will be shown, the proration clause at the end of the antistacking provision allows for this possibility.

¶ 7    As to the first issue, the McFaddens responded that the policies' antistacking language, which limited underinsured coverage to $100,000, was rendered ambiguous by: (1) the policies' proration clauses; and (2) the policies' declaration sheets. They argued that, if the antistacking language was ambiguous, it did not effectively prevent them from accumulating more than $100,000 in underinsured coverage.

¶ 8    As to the second issue, the McFaddens conceded that *Jones* and *Kapinus* establish an offset-first, stack-second computation method. They further conceded that, under the offset-first, stack-second computation method, there is no underinsured coverage. However, the McFaddens argued that *Jones* and *Kapinus* were wrong.

¶ 9    The trial court recognized that it was *compelled* to rule in favor of State Farm on the second issue. *Jones* and *Kapinus*, which come from the First and Third Districts, respectively, stand unrebutted. A decision by an appellate court, while not binding on other appellate districts, *is* binding on circuit courts throughout the state. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539 (1992). Because State Farm need prevail on only one of its arguments in order to deny coverage, the court did not address the first issue. This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11   The two questions of law presented to the trial court may be thought of as: (1) *can* we stack? (whether the policies' antistacking language effectively limits coverage to the amount contained in the single policy providing the highest limit); and, (2) *if* we can, *how* do we stack? (whether the methodology is offset first, stack second, or the other way around). From an analytic perspective, it makes sense to determine if the policies can be aggregated so as to exceed $100,000 before determining whether such an aggregation must be accomplished by offsetting first, stacking second, or the other way around. Although the trial court did not answer the first question, we may. This court may address questions of law presented to, but not decided by, the trial court. See, *e.g.*, *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 75-76 (1992).[2]

¶ 12   Therefore, we move to the first issue. The McFaddens argue that each policy's antistacking provision is ineffective to limit coverage to the highest amount contained in a single policy, *i.e.*, $100,000, because: (1) it is internally inconsistent (the antistacking provision is rendered ambiguous by its own proration clause); and, (2) even if it would have been effective on its own, it is rendered ambiguous when read in conjunction with each policy's declarations sheet. We reject each of these arguments.

¶ 13              A. Antistacking Provision Is Internally Consistent

¶ 14   An insurance provision that limits the total liability from all policies to that of the single

_____

[2]The parties fully briefed the first issue before the trial court, and these briefs are in the record. The appellate briefs were less detailed. In advance of oral argument, this court ordered the parties to be prepared to present the first issue.

policy providing the highest limit is referred to as an "antistacking provision." However, this is in some ways a misnomer, because an underinsured coverage antistacking provision does not necessarily preclude aggregation of *portions* of multiple policies. Rather, an antistacking provision limits the *total coverage* to that set forth in the *single* policy with the highest limit. See, *e.g.*, *Armstrong v. State Farm Mutual Automobile Insurance Co.*, 229 Ill. App. 3d 971, 974-76 (1992). This concept is consistent with the section of the Illinois Insurance Code authorizing antistacking provisions:

"Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy ***, any recovery or benefits may be equal to, but may not exceed, the higher of applicable limits of the respective coverage ***." 215 ILCS 5/143a-2(5) (West 2008).

¶ 15        Here, the issue is whether the policies' antistacking language effectively limits coverage to the amount contained in the single policy providing the highest limit, *i.e.*, $100,000. Each of the five policies contains the *same* antistacking provision. It is comprised of the express antistacking language (paragraph 1), the proration clause (paragraph 3), and a definition clause (paragraph 2), which is necessary to understand the proration clause:

"If There is Other Underinsured Motor Vehicle Coverage ***

1. If underinsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers *shall not exceed the limit of liability of the single policy providing the highest limit of liability*. This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid[,] or vehicles involved in the accident.

2. Subject to item 1 above, any coverage applicable under this policy shall apply:

a. On a *primary* basis if the insured sustains bodily injury while occupying your car,[3] or while not occupying a motor vehicle or trailer.

b. On an *excess* basis if the insured sustains bodily injury while occupying a vehicle other than your car.

3. Subject to items 1 and 2 above, if this policy and one or more other policies provide coverage for bodily injury:

a. *On a primary basis, we are liable only for our share*. Our share is that percent of the damages payable on a primary basis that the limit of liability of this policy bears to the total of all applicable underinsured motor vehicle coverage provided on a primary basis. The total damages payable from all policies that apply on a primary basis shall not exceed the limit of liability of the single policy providing the highest limit of liability on a primary basis.

b. *On an excess basis, we are liable only for our share*. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy

---

[3]"Your car" is the car described on the declarations page.

bears to the total of all applicable underinsured motor vehicle coverage provided on an excess basis. The total damages payable from all policies that apply on an excess basis shall not exceed the amount by which the limit of liability of the single policy providing the highest limit of liability on an excess basis exceeds the limit of liability of the single policy providing the highest limit of liability on a primary basis." (Emphases added.)

¶ 16    The McFaddens argue that the antistacking provision is internally inconsistent. They assert that the antistacking language in the first paragraph conflicts with the definition and proration clauses in paragraphs 2 and 3 because "[p]aragraph 1 *** expresses a formula that precludes factoring in all the policies *** as it simply [instructs] to use the [single] highest policy issued," whereas "[paragraphs 2 and 3] require[ ] *** that we include all policies *** in the equation."

¶ 17    We reject the McFaddens' reading of the policy. Paragraph 1 merely limits the coverage *amount* to that of the single policy providing the highest limit. It does *not*, as the McFaddens imply, preclude joint coverage. Paragraphs 2 and 3 then set forth the rules to determine the coverage share, if any, of each policy. This position is supported by *Armstrong*, 229 Ill. App. 3d at 976.

¶ 18    In *Armstrong*, this district was faced with four policies that each had an antistacking provision and a proration clause similar enough to the instant case to provide a working illustration. There, the injured insured was covered by four policies:

| Vehicle | Uninsured Limit |
| --- | --- |
| 1987 motorcycle (in crash) | $25,000 |
| 1979 Malibu | $25,000 |
| 1987 Colt | $100,000 |
| 1986 Mazda | $50,000 |

The single policy containing the highest limit provided $100,000. Therefore, that was the total cap. The policy providing coverage on a "primary" basis contributed the first $25,000. The injured insured was then entitled to an additional $75,000 total, collected *pro rata* from those policies providing coverage on an "excess" basis. *Id.* at 974, 976.

¶ 19    When faced with the question of whether the proration clause rendered ambiguous the antistacking provision so as to allow for more than $100,000 in coverage, the *Armstrong* court answered in the negative:

"The presence of a 'proration clause' at the end of the [antistacking] provision does not introduce ambiguity into the clear language of the 'antistacking' provision. The proration clause is set off from the 'antistacking' language. The proration clause is designed to prevent other insurers, if any, from paying less than their fair share of a jointly covered loss. [Citation.] The 'antistacking' provision and the proration clause serve separate and important functions. Although the questioned language is somewhat technical in nature, we conclude that the [antistacking language in the] endorsement accomplished its intended purpose and limited plaintiff's recovery of uninsured motorist coverage to $100,000." *Id.* at 976.

¶ 20    Applying *Armstrong* to the instant case, we find that the proration clause at the end of the antistacking provision does not introduce ambiguity. Here, the injured insured was covered by five policies:

| Vehicle | Underinsured Limit |
| --- | --- |
| 2004 Harley (in crash) | $100,000 |
| 2008 Ford | $100,000 |
| 1995 Saturn | $100,000 |
| 1997 Honda | $100,000 |
| 1995 Harley | $100,000 |

The single policy containing the highest limit provides $100,000. Therefore, under the antistacking language in paragraph 1, this is the total cap. The 2004 Harley policy provides coverage on a "primary" basis. It contributes the first $100,000. This meets the total cap, so no other policies contribute. In other words, because there is only one policy providing coverage on a primary basis, and that same policy also provides the highest limit, we do not need to look to the proration clauses' instruction that "[t]he total damages payable from all policies that apply on an excess basis shall not exceed the amount by which the limit of liability of the single policy providing the highest limit of liability on an excess basis exceeds the limit of liability of the single policy providing the highest limit of liability on a primary basis."

¶ 21    We are not persuaded by *Jones v. State Farm Mutual Automobile Insurance Co.*, 289 Ill. App. 3d 903 (1997), upon which the McFaddens rely. That case held that the antistacking provision was too difficult to be understood by an ordinary person and, therefore, was ineffective. *Id.* at 916. However, *Jones* is inapposite, because its antistacking provision did not have critical language contained in both *Armstrong* and the instant case. *Jones* addressed what would be analogous to the proration clause here concerning coverage on an excess basis. *Id.* at 911. *Jones* did not quote anything analogous to the antistacking language in paragraph 1 or the definitions in paragraph 2 in our case, using asterisks to omit paragraphs 1 and 2 and skipping right to paragraph 3. *Id.* Therefore, *Jones* did *not* examine the interplay between express antistacking language, which sets the limit of liability as the amount contained in the single policy with the highest limit, and a proration clause, which sets forth the rules to determine the coverage share, if any, of each policy.

¶ 22    For the reasons set forth above, the proration clause does not render ambiguous the express antistacking language, which states that "the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability." The antistacking provision is not internally inconsistent, and it effectively limits the McFaddens' underinsured coverage to $100,000.

¶ 23                              B. Declarations Sheets Do Not Render
                                  Ambiguous the Antistacking Provision

¶ 24    The McFaddens next argue that, even if the antistacking provision was clearly stated, it is rendered ambiguous when read in conjunction with each policy's declarations sheet. As

a quick review, each policy covers one vehicle. Each policy has a "declarations sheet," listing the relevant vehicle, premium amount, and underinsured coverage amount. The declarations sheet is the first page of each policy, and can be thought of as a summary of the document.

¶ 25 The McFaddens assert that, because each policy's respective declarations sheet reflects a separate premium amount for a full $100,000 limit of underinsured coverage without a single qualifying statement, an insured could reasonably believe that he or she was entitled to the cumulative amount of all five policies' coverage. They note that, where a policy is subject to more than one reasonable interpretation, it is ambiguous, and ambiguities must be resolved in favor of the insured. *Hobbs*, 214 Ill. 2d at 17.

¶ 26 We disagree that the declarations sheets render ambiguous the antistacking provision. Three supreme court cases collectively establish that, when considering whether a declarations sheet renders ambiguous an antistacking provision, the relevant inquiry is whether: (1) the declarations sheet merely leaves open the question of stacking, which can be answered unambiguously in the negative by a clear antistacking provision (*id.* at 23; *Grzeszczak*, 168 Ill. 2d at 229); or (2) the declarations sheet is actually inconsistent with the antistacking provision, thereby creating an ambiguity on the issue of stacking to be resolved in favor of the insured (*Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 192 (1993)).[4] As stated by Judge Easterbrook, "even if some other clause suggests the possibility of stacking" (emphasis omitted), a clear antistacking provision serves as a "disambiguator." *Grinnell Select Insurance Co. v. Baker*, 362 F.3d 1005, 1007 (7th Cir. 2004) (discussing Illinois law). We first discuss *Hobbs* and *Grzeszczak*, which are analogous to the instant case. We then discuss the hypothetical situation set forth in *Bruder*, which is not analogous to the instant case.

¶ 27 In *Hobbs*, one policy covered two vehicles. The declarations sheet listed the amount of underinsured coverage only once but listed a separate premium amount for each vehicle. Therefore, the structure of the declarations sheet read across, like a row:

$100,000 limit of liability     Premium A (for Vehicle 1)     Premium B (for Vehicle 2)

The declarations sheet then stated that " 'COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN.' " *Hobbs*, 214 Ill. 2d at 23. The insured argued that this statement made it reasonable for her to believe that she was entitled to a total of $200,000 in coverage from this policy, *i.e.*, $100,000 for each premium paid.

¶ 28 The *Hobbs* court acknowledged that the declarations sheet, standing alone, "le[ft] open the question" of stacking, or aggregating entire policies. *Id.* However, the court stressed that this did *not* necessarily create an ambiguity:

"The declarations page of an insurance policy is but one piece of the insuring agreement.

---

[4]To the extent that *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330 (1974), and *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167 (1977), upon which the McFaddens rely, present a different approach, those cases are outdated. Declarations sheets and antistacking provisions such as those at issue here are not *per se* "contrary expressions." See *Hobbs*, 214 Ill. 2d at 23; *Grzeszczak*, 168 Ill. 2d at 229; *Bruder*, 156 Ill. 2d at 194 (declarations sheet "consistent with" antistacking provision).

[Citation.] Although it contains important information specific to the policyholder, the declarations page cannot address every conceivable coverage issue. Thus, some uncertainty could arise if the declarations page is read in isolation from the rest of the agreement. ***

> 'Any provision of a lengthy document is bound to be ambiguous in the sense that it creates questions that can be answered only with reference to other portions of the document. That is why all provisions of an insurance policy must be construed together.' [Citation.]" *Id.*

¶ 29    The *Hobbs* court found that the question of stacking could be unambiguously answered in the negative by the antistacking provision, which stated:

> " 'The limit of liability shown in the declarations for each person for Underinsured Motorist Coverage is our maximum limit of liability for all damages ***. *** This is the most we will pay regardless of the number of:
>
> > (1) Insureds;
> >
> > (2) Claims made; ***
> >
> > (3) *Vehicles or premiums* shown in the Declarations;
> >
> > or (4) Vehicles involved in the accident.' " (Emphasis added.) *Id*. at 18.

Whatever the insured may have reasonably thought after reading the declarations sheet in isolation, the antistacking provision clarified that the underinsured coverage could not be stacked for each vehicle simply because more than one premium had been paid. *Id.* at 23-24.

¶ 30    In *Grzeszczak*, the insured purchased two policies, each of which covered a different vehicle and charged a separate premium for underinsured coverage. *Grzeszczak*, 168 Ill. 2d at 219-20. The declarations sheets were not at issue, though we infer that they were similar in structure to those in the instant case, because each policy covered only one vehicle. The *Grzeszczak* court held that the insured's belief that she was receiving two separate coverages for the two premiums paid was "rebutted" by the policies' antistacking provision, which stated: " 'Two or More Cars Insured[:] With respect to any accident *** to which this and any other *** policy issued to you *** applies, *the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy*.' " (Emphasis added.) *Id.* at 220-21, 229.

¶ 31    Here, the McFaddens purchased five separate policies for which they paid five separate premiums. Each policy's declarations sheet reflected a separate premium amount, thereby leaving open the question of stacking. However, each policy's antistacking provision clarified that, "regardless of the number of policies involved, *** vehicles insured, [or] premiums paid," the total limit available from all policies "shall not exceed the limit of liability of the single policy providing the highest limit of liability." The payment of multiple premiums (and the notion that this entitles an insured to separate coverage) is of no consequence where an antistacking provision's clear and unambiguous language manifests the parties' contrary intent. *Id.* at 228 (discussing *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 425 (1980)). Per *Hobbs* and *Grzeszczak*, any assumption of stacking that the McFaddens may have had based upon reading the declarations sheets in isolation has been

unambiguously rebutted by the antistacking provision.

¶ 32     Contrary to the McFaddens' position, this case is not like the hypothetical scenario set forth in *dicta* by *Bruder*. To better understand the hypothetical (and, therefore, the McFaddens' argument), we address *Bruder*'s actual ruling as well. In *Bruder*, the court was confronted with the following antistacking provision: " 'The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is *the* limit of Bodily Injury shown in the declarations for "Each Person." ' " (Emphasis added.) *Bruder*, 156 Ill. 2d at 189. The court compared the structure of two declarations sheets, one actual (*id.* at 200 (Harrison, J., concurring in part and dissenting in part, joined by Bilandic, J.)) and one hypothetical:

Actual

Limit of Liability $100,000

| Vehicle 1 | Premium A |
| Vehicle 2 | Premium B |

Hypothetical

| Vehicle 1 | Premium A | Limit of Liability $100,000 |
| Vehicle 2 | Premium B | Limit of Liability $100,000 |

The court found that the structure of the *actual* declarations sheet, which showed only *one* limit of liability in the amount of $100,000, together with the antistacking provision referencing *the* limit of liability, did not allow an insured to stack $100,000 for each vehicle premium. *Id.* at 193-94 (majority op.). The court stated that the limit of liability set forth on the declarations sheet was "consistent with" the language in the antistacking provision; the declarations sheet set forth only *one* limit amount and the antistacking provision stated that the insured's coverage would be limited to *the* limit amount. *Id.*

¶ 33     The court stated in *dicta*, however, that, had the declarations sheet showed *two* limits of liability, one after each vehicle, it would render ambiguous the antistacking provision. *Id.* at 192. The declarations sheet would show two limits but the antistacking provision refers only to *the* limit. Therefore, it would be reasonable for an insured to believe that he or she was entitled to a total limit of $200,000, and the antistacking provision would not unambiguously rebut that assumption. *Id.*

¶ 34     The McFaddens argue that their declarations sheets have the same structure as those in the *Bruder* hypothetical, and therefore it is reasonable for them to believe they are entitled to stack coverage. They assert that, as in the *Bruder* hypothetical, the same underinsured coverage amount repeats for each insured vehicle, giving the impression of cumulative coverage.

¶ 35     To point to the obvious, the structures are not the same; the *Bruder* hypothetical dealt with a single declarations sheet, whereas our case deals with five declarations sheets. More critical, however, is that the *Bruder* hypothetical was not just about the declarations sheet. It was about the interplay between the declarations sheet *and* the antistacking provision. The hypothetical declarations sheet listed two separate limits of liability but the antistacking provision referred only to *the* limit, creating an inconsistency and, therefore, an ambiguity.

Had the antistacking provision in *Bruder* instead stated that "the most the insurance company would pay is the *highest* limit among those set forth," there would be no inconsistency. Instead, the antistacking provision would acknowledge that two amounts had been set forth, but that the insured's coverage would be limited to the higher of those amounts.

¶ 36 Here, as we have discussed, the declarations sheets are not inconsistent with the antistacking provision. The antistacking provision acknowledges that an insured may have other policies, each with a declarations sheet setting forth its own limit. However, the antistacking provision clarifies that the insured's total coverage will not exceed "the limit of liability of the single policy providing the highest limit." The declarations sheets, read in isolation, might leave open the question of stacking, but the antistacking provision unambiguously answers that question in the negative.

¶ 37 One basis by which to deny coverage is sufficient. Therefore, we need not address the second basis: whether, *in the absence of express antistacking language*, stacking methodology results in coverage that exceeds $100,000. Both the offset-first, stack-second *and* the stack-first, offset-second methodologies conflict with the antistacking provision. There *is* antistacking language, which means that any determination by us on stacking methodology, as set forth in *Jones* (2007) and *Kapinus*, would be purely advisory. In the interest of judicial economy, we affirm the trial court's denial of coverage on a question of law presented to, but not decided by, the trial court.

¶ 38                                        III. CONCLUSION
¶ 39 For the aforementioned reasons, we affirm the trial court's denial of coverage, albeit on a different basis.

¶ 40 Affirmed.